## RUSSO v. LOUISIANA COCA-COLA BOTTLING CO.*

### No. 16096.

Court of Appeal of Louisiana. Orleans.
June 10, 1935.

Wm. H. Talbot, of New Orleans, for appellant.

Blasi & Sehrt, of New Orleans, for appellee.

JANVIER, Judge.

Jennie Russo claims that as she drank from a bottle of Coca-Cola a portion of the contents, she swallowed two small bits of glass which were in the bottle when she purchased it. She alleges that the bottle had been purchased unopened from a nearby dispenser of cold drinks and that it had been manufactured by the defendant and that she herself opened it, and that the glass could not have found its way into the bottle after it was opened by her. She charges that the presence of the bits of glass which she swallowed, and of another which she found either in the bottle or in her mouth, resulted from negligence in the manufacture of the contents, or in the filling or capping of the bottle. She asserts that the said Coca-Cola had been sold by defendant manufacturer to the local retailer, from whom she purchased it, and maintains that the said manufacturer is liable for the damage resulting from the physical injuries she claims to have sustained.

Defendant, after denying that plaintiff swallowed any glass, or that there was any in the bottle, contends that, even if she did so, there is no proof that the glass found its way into the bottle as a result of its negligence, and it maintains that, as a matter of law, it is not liable for the results of such an occurrence except upon proof of actual negligence on its part, asserting that it is shown that it manufactures and bottles the cold drink known as Coca-Cola with modern machinery and "up-to-date" equipment and takes all reasonable precautions to prevent the entry of foreign substances into the bottles. Mrs. Russo claims to have sustained rather severe injuries and she seeks judgment in the sum of $7,110.

In the district court there was a trial by jury, which rendered a verdict reading as follows: "We, the jury, agree that plaintiff suffered damages and is entitled to a total sum of $750.00."

The verdict was not unanimous, three of the jurors having voted against it. From a judgment for plaintiff for the amount set forth in the verdict, defendant has appealed.

Counsel for defendant vigorously contends that a manufacturer of foodstuffs, or a bottler of drinks, should not be held liable as an absolute guarantor of the soundness of his product and maintains that such a manufacturer or bottler does not unconditionally warrant that his goods are free from deleterious foreign matter and that where it is shown that modern machinery and equipment are used and that all reasonable care is exercised, there should be no liability merely because, in spite of such equipment and regardless of such care, some unwholesome ingredient or some dangerous foreign substance has entered into the product. As supporting this view, we find F. W. Woolworth Co. v. Wilson, 74 F.(2d) 439, 441, a case which originated in the state of Texas and in which the United States Circuit Court of Appeals for the Fifth Circuit quoted with approval from Travis v. Louisville & N. R. Co., 183 Ala. 415, 62 So. 851, as follows: "* * * In the selection of the food for his restaurant and in cooking it for his customers, he shall exercise that same degree of care which a

reasonably prudent man, skilled in the art of selecting and preparing food for human consumption, would be expected to exercise in the selection and preparation of food for his own private table."

After stating its approval of the above language, the court in F. W. Woolworth Co. v. Wilson, supra, set forth, in an interesting discussion, its own views on the question: "But to imply a warranty which imposes a greater liability than the law fixes may operate most unjustly, and is really a fiction probably far from the actual intention of the parties. If the customer before eating were to ask of the proprietor: 'Will you warrant this food so that if it injures me you will be bound to recompense me?' the proprietor would most likely say: 'I have used the utmost care to have it pure and good, and believe it is, and if it is not good you may have your money back, but I cannot assume for a few cents to insure you.'"

On the other hand, counsel for plaintiff maintains that if there is foreign deleterious matter in such a manufactured article, its mere presence raises such a presumption of negligence as to place upon the manufacturer the duty of proving that it entered the product after it had left his hands and that if it entered the article during the process of manufacture, the manufacturer is liable for the results, regardless of the proof of the exercise of the most extreme care. In other words, that the manufacturer of such an article as is involved here must be held to warrant that it contains no foreign matter and is safe for human consumption. As supporting this view, the following authorities are cited by plaintiff: Costello v. Morrison Cafeteria Co. of La., 18 La. App. 40, 135 So. 245; Doyle v. Fuerst & Kraemer, Ltd., 129 La. 838, 56 So. 906, 40 L. R. A. (N. S.) 480, Ann. Cas. 1913B, 1110; Rainwater v. Hattiesburg Coca-Cola Bottling Co., 131 Miss. 315, 95 So. 444; Coca-Cola Bottling Works v. Lyons, 145 Miss. 876, 111 So. 305; Parks et al. v. G. C. Yost Pie Co. et al., 93 Kan. 334, 144 P. 202, L. R. A. 1915C, 179; Mazetti et al. v. Armour & Co. et al., 75 Wash. 622, 135 P. 633, 48 L. R. A. (N. S.) 213, Ann. Cas. 1915C, 140.

■■ Whatever may be the duty imposed by law upon a manufacturer of foodstuffs, or upon a bottler of liquid refreshments, there can be no liability unless the person who claims to have been injured under circumstances such as are alleged here first proves, by a preponderance of evidence, that the injury was actually sustained and that it occurred as alleged. In considering whether such an accident actually occurred, it is well to bear in mind that the manufacturer necessarily can have no means of disproving by eyewitnesses that the occurrence alleged actually took place. In such circumstances, plaintiff's evidence should be most carefully scrutinized, especially when, as here, the evidence of defendant shows that because of the extreme care employed in the course of manufacture and in the course of bottling, it is, though not impossible, highly improbable that a foreign substance could have entered into the article.

Bearing this in mind, we have read and carefully analyzed the evidence submitted by the plaintiff and we find it far from convincing. Plaintiff contends that she swallowed two small pieces of glass and she is most positive that she could count them as they passed down her threat. Her doctor testifies that it is most doubtful if she could have counted the two pieces. When asked whether in such case a person would "be able to tell you how many pieces of glass they swallowed," he said: "I doubt it," and later he characterized it as "very unlikely." Her physician further testified that if she had swallowed two pieces of glass, and if she had coughed up another piece, as at one point in her testimony she says that she did, it is most probable that there would have been scratches or abrasions in her mouth, or in her throat, and he says that he found no evidence whatever of any such scratches or abrasions.

While she and her witnesses testify that there was a great amount of blood vomited after the alleged occurrence, the doctor states that he only found "some blood streaks," and while he said that these might have been caused by the swallowing of glass, he also admitted that "it could be caused from a number of things," and among the other things which he said might have caused it were a severe cough, a strain, or a nervousness resulting from thinking that she had swallowed something.

The testimony of the plaintiff that a few days later evidences of large quantities of blood appeared in her stools is not corroborated, the doctor testifying that his attention was not called to any such stools.

There is much confusion among plaintiff's witnesses as to whether the piece of glass offered in evidence was found in plaintiff's throat, or remained in the bottle, and there is also much contradiction among them as to whether plaintiff coughed up the piece of glass into her hand, or into a basin which some of them went for. Then, too, in one part of plaintiff's testimony she stated that she

vomited on the floor of the room, whereas there is no dispute at all over the fact that she was sitting on the front steps at the time of the occurrence. Strangely enough, her fourteen year old son, who was "doing his home-work" in the front room of the house, only a very few feet from the steps on which his mother claims to have been sitting when she drank the Coca-Cola, knew nothing whatever about the occurrence, although his mother states that there was great confusion and excitement. It is impossible to believe, with such passing back and forth and such commotion, this young man would not have known of so serious an occurrence as the swallowing of glass by his mother.

■ It may be that the glass was in the bottle and that the plaintiff swallowed it. But a careful reading of the evidence makes it impossible that we reach any other conclusion than that the occurrence is so extremely doubtful as to be impossible of acceptance by us.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is reversed and that plaintiff's suit be and it is dismissed at her cost.

Reversed.