## HILL v. LOUISIANA COCA–COLA BOT-TLING CO.

### No. 16097.

Court of Appeal of Louisiana. Orleans.

Oct. 19, 1936.

Wm. H. Talbot, of New Orleans, for appellant.

Porteous, Johnson & Humphrey, of New Orleans, for appellee.

McCALEB, Judge.

Josie Hill, a colored woman, claims that as she drank from a bottle of Coca-Cola, she swallowed small particles of glass which were in the bottle when she purchased it. She alleges that the bottle had been purchased unopened from a local dispenser of the beverage, that it had been manufactured by the defendant, and that she, herself, opened it, and that the glass was in the bottle at the time it was opened by her. She further avers that she had taken an aspirin tablet with the swallows of Coca-Cola, and that when she had consumed approximately half of the bottle, she began to gag and choke violently, and proceeded to cough and vomit, and that she vomited considerable small particles of glass which had seriously cut the inside of her throat or stomach; that after having vomited considerable glass, she still continued to cough and vomit more glass. As a result, she says that her throat, stomach, and esophagus were badly cut, and that she suffers pains in the stomach and epigastrium; that she is still alarmed as a result of her condition and is unable to do any work.

She alleges that the Coca-Cola Company is responsible to her for her injuries because the defendant warranted the fitness of its product for human consumption, and that, accordingly, she is entitled to recover damages against it which she fixes at the sum of $3,500.

The defendant answered, denying all of the allegations of the petition, and set up as a special defense that its plant is equipped with the most modern and up-to-date machinery for the purpose of bottling its product, that it is impossible for any foreign substance to get into the Coca-Cola or into the bottles, and that if the plaintiff was injured, as alleged, the glass must have found its way into the bottle after the defendant had disposed of same, and that in any event it is not responsible for the plaintiff's injury.

Upon these issues a trial by jury was had, which resulted in an eleven to one verdict in favor of the plaintiff, awarding her damages in the sum of $300. A judgment by the lower court was entered on the verdict, and the defendant has appealed. Plaintiff has answered the appeal, praying for an increase of the judgment below to the amount claimed in the petition.

The defendant offered evidence at the trial, through its production manager and

superintendent, explaining the method used in cleaning and filling the bottles in its plant (which is proven to be quite modern and to be equipped with ample facilities), tending to insure the purity of its product. This evidence shows that while the defendant company has done everything humanly possible to protect the public against deleterious substances finding their way into the Coca-Cola bottles, and that it is highly improbable, under the various tests and inspections to which the product is subjected, that it is not impossible for foreign matter to enter into the bottles or beverage during the bottling and capping process. In fact, the defendant's witness admitted, under cross-examination, that foreign matter had been found in Coca-Cola bottles and that it is the practice of defendant to subject bottles to a final light test for the purpose of discovering the presence of such objects, the test being made by young women employed for that purpose, who, of course, are not infallible.

Upon the foregoing evidence tendered by the defendant company, the contention is made that a manufacturer of foods or beverages should not be held liable as a guarantor of the soundness of its product, and that, where it is shown that modern machinery and equipment are used and reasonable care exercised, there should be no liability merely because in spite of such equipment and regardless of such care, some unwholesome ingredient or some dangerous foreign substance has entered the product. In support of this view, the case of F. W. Woolworth Co. v. Wilson (C.C.A.) 74 F.(2d) 439, 98 A.L.R. 681, is directed to our attention. This same case was discussed by us in the recent case of Russo v. Louisiana Coca-Cola Bottling Co., 161 So. 909, 910.

While it does not appear that the court passed upon the problem presented by counsel in the Russo Case (that case being decided upon solely a question of fact), the rule of law is well established in the state respecting this type of case. See King v. Louisiana Coca-Cola Bottling Co. (La.App.-Orleans) 151 So. 252; Dean v. Alexandria Coca-Cola Bottling Co. (La.App.-2nd Circuit) 148 So. 448. Where the plaintiff shows by a preponderance of evidence that there was glass or other foreign substance contained in the beverage or bottle thereof, that he consumed such deleterious matter and suffered injury as a result, then the burden of proof shifts to the defendant company to excuse itself from liability by proving to the satisfaction of the court that the foreign substance or glass did not enter its product during the bottling or manufacturing process. In other words, upon proof of the fact by the plaintiff of the consumption of the foreign matter and injury caused to him thereby, the doctrine of res ipsa loquitur applies. See Costello v. Morrison Cafeteria Co. of Louisiana, 18 La.App. 40, 135 So. 245; Doyle v. Fuerst & Kraemer, Ltd., 129 La. 838, 56 So. 906, 40 L.R.A.(N.S.) 480, Ann. Cas.1913B, 1110.

We are next confronted with the proposition as to whether the plaintiff has proved by a preponderance of evidence that there was glass in the bottle and that she swallowed it, causing her injury.

The evidence tendered to sustain this contention consists of the testimony of the plaintiff and one Emma Caldwell.

Plaintiff relates that on the morning of July 19, 1934, she was suffering with a headache, that she spoke to Emma Caldwell (the woman who lived in the tenement above her) about it, and that Emma Caldwell recommended an aspirin tablet. Plaintiff told Emma Caldwell that aspirin always made her sick, and Emma Caldwell suggested that if she took the aspirin followed by a drink of Coca-Cola it would be all right. Accordingly, the plaintiff sent her thirteen year old daughter to Renaudin's Pharmacy where a bottle of Coca-Cola was purchased and delivered by plaintiff's daughter to the plaintiff. Plaintiff says that she thereupon put the aspirin in her mouth (the tablet having previously been supplied by Emma Caldwell) and drank some of the Coca-Cola, at which time she started to cough and vomit some glass. She immediately recapped the bottle and brought it to the First precinct police station. From there she relates that she went to the Charity Hospital, but the admittance card, or other evidence that she ever attended the hospital, or was treated there, is not produced. She then consulted her attorney and he advised her to go to Dr. John Oakley for examination. She further testifies that Dr. Oakley, after obtaining a history of her complaint, recommended that she eat bananas and that any glass which might be in her system would pass through. She

further says that the glass made her sick for a few days afterwards, and that since then she has been in a nervous state; that she intermittently has pains in her stomach which have hurt her from the time of the accident to the date of trial, February 5, 1935, and that on four different occasions she has passed streaks of blood in her stool.

The testimony of the plaintiff is corroborated in part by Emma Caldwell. This witness says that she was present when the plaintiff swallowed the glass and saw the glass which plaintiff coughed up or vomited on that occasion. She also says that she was on hand when blood was found in plaintiff's stool and observed it.

It is significant to note at this point, that notwithstanding the testimony of plaintiff and her witness, Emma Caldwell, as to the serious injuries suffered by the plaintiff, that other than the testimony of Dr. John Oakley, which will hereinafter be commented upon, that there is no evidence submitted to show that plaintiff was ever administered treatment by any physician either at her home or at the Charity Hospital.

The testimony of Dr. John Oakley is not helpful to plaintiff's cause. This physician relates, in substance, that the plaintiff called to see him on the date of the alleged accident and shortly after it occurred. She explained to him what had happened and he immediately made a careful examination of the interior of her mouth and throat and the result of his examination was negative. He frankly states that he could not find anything wrong with the plaintiff, but due to the history which she gave him, he advised her to eat cereals and soft foods, such as ripe bananas. He says that she called to see him about ten days later and that he diagnosed her complaint to be nervous indigestion or gastric neurosis. As to what the indigestion or gas was caused from, the doctor opines that he does not believe it to be unreasonable to assume that she feared she had something in her intestinal tract which would do her real harm.

The defendant produced Dr. Simon Geismar who testified that on July 26, 1934, he examined the plaintiff, and could not find anything wrong with her.

In view of the medical testimony, which is strongly against plaintiff, and because of the fact that she has failed to produce any evidence other than her own and that of Emma Caldwell, disclosing that she suffered any injury, we have extreme doubt that plaintiff swallowed the glass in the manner alleged, or, if she did, that she suffered internal injuries as the result thereof.

■ The diagnosis of Dr. Oakley that she suffered from nervous indigestion is not unusual, inasmuch as it is common knowledge that this ailment may be caused from a variety of sources.

Moreover, the Coca-Cola bottle with part of its contents was offered in evidence and an examination of the same shows that although a few small particles of glass were in the bottom of the liquid, the bottle itself is free from any vice or defect whatsoever.

On the whole, we are not favorably impressed with the plaintiff's evidence, and in view of the rule of law that the plaintiff must prove her case by a preponderance of evidence, there is no alternative other than to deny recovery. In Russo v. Coca-Cola Bottling Co., supra (a case very similar to this one), in discussing the question of liability in these cases, we said: "In considering whether such an accident actually occurred, it is well to bear in mind that the manufacturer necessarily can have no means of disproving by eyewitnesses that the occurrence alleged actually took place. In such circumstances, plaintiff's evidence should be most carefully scrutinized, especially when, as here, the evidence of defendant shows that because of the extreme care employed in the course of manufacture and in the course of bottling, it is, though not impossible, highly improbable that a foreign substance could have entered into the article."

The Russo Case, King v. Louisiana Coca-Cola Bottling Co., supra, Dean v. Alexandria Coca-Cola Bottling Co., supra, and Van Herr v. Louisiana Coca-Cola Bottling Co. (La.App.) 148 So. 75, were all cases in which the proof tendered by plaintiff was stronger than in the case at bar but still recovery was denied.

■■ Our attention is called to the settled jurisprudence, that the verdict of a jury or findings by the district judge on

questions of fact will not be disturbed by the appellate court unless such findings are manifestly erroneous. But we also are cognizant of the rule of law that the plaintiff must make his case certain and prove it by a preponderance of evidence. Being of the belief that the plaintiff has failed in that respect, and that it was obvious error for the jury to hold otherwise, her suit must be dismissed.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, reversed, and that plaintiff's suit be, and it is, dismissed at her cost.

Reversed.