## KOHLMAN et al. v. JEFFERSON BOTTLING CO., Inc.

### No. 17226.

Court of Appeal of Louisiana. Orleans.

Nov. 13, 1939.

Habans & Coleman, of New Orleans, for appellants.

Edw. Rightor and W. H. Sellers, both of New Orleans, for appellee.

WESTERFIELD, Judge.

This is an appeal from a judgment denying to plaintiff recovery in a suit for damages based upon an alleged illness said to have been caused by the consumption of a part of a bottle of "Tom Collins, Jr.", a beverage manufactured by the defendant, Jefferson Bottling Company, Inc.

Mary Kohlman, the plaintiff, testified that while in her husband's barroom, in the company of Eugene Harrison and a woman friend by the name of Zenobia, she drank about one-third of a bottle of "Tom Collins, Jr.", which Eugene Harrison had purchased for her and that "when I drank it, it began to tie my mouth up tight, and I told Eugene something was wrong and I felt sick and felt like I wanted to vomit, and Zenobia went to the ladies dressing room with me, and I vomited and after I went home, my mouth was sore." She also testified that the liquid caused blisters in her mouth, on her tongue, her gums and lips and that these blisters remained for more than two weeks. When asked when she first noticed the blisters she replied "as soon as I drank the bottle of 'Tom Collins, Jr.' ".

Plaintiff is corroborated by Eugene Harrison, Nelson Harper, the bartender, and to a certain extent by her husband, Louis Kohlman, who was not present when plaintiff drank the "Tom Collins, Jr.," and whose testimony is confined to the statement that when he went to his home at midnight he found his wife very ill and her mouth and lips burned and full of blisters, a condition which did not obtain when last he saw her earlier in the day.

Two doctors examined the plaintiff, one of them Dr. John Redding representing the defendant, was the first to see her— the second morning after the alleged oc-

currence. Dr. Redding testified that he could find no objective symptoms of illness except a little tenderness in the pit of her stomach on pressure. Plaintiff gave him a history of having been made ill as a result of drinking a portion of a "Tom Collins, Jr." and stated that she had been nauseated and suffered from cramps in the stomach and had passed blood. He found no blisters on her mouth and nothing wrong with her tongue or gums.

Plaintiff's physician, Dr. R. J. Coker, saw her on the same day. He found her mouth burned and stated that there were blisters in her mouth and throat and that it was "red and whitish resembling the beginning of diptheria". He expressed the opinion that her condition was due to "alkali poison or a mild acid poison".

On behalf of the defendant its president testified that it had a modern sanitary plant. The defendant's superintendent, Edward Masset, went into considerable detail concerning the methods employed by defendant in cleansing the bottles. He explained that they were passed through a tank containing caustic soda where they were filled and then emptied. They were then rinsed with clear water five different times, three of the rinsings being with very hot water. In the process the bottles are inverted and the water forced into them while in that position, brushes being used in the final rinsing. There is also an inspector who examines the bottles with the aid of two two hundred watt lights and a reflector.

A portion of the liquid, some of which the plaintiff had consumed, was preserved and submitted to John N. Daneker, City Chemist, for analysis six months after the alleged poisoning of plaintiff. According to his testimony, there were no poisons in it, but "the odor of the contents (of the bottle) was sour and fermented. There was a solid material in the liquid and it was examined microscopically and was found to be vegetable fiber and yeast cells and tests were made for mineral poisons and that was negative and tests were made for other poisons and they were negative and tests made for acetic acid." In the six months that had elapsed the contents had undergone a chemical change due to fermentation. There was acetic acid, the presence of which, together with the yeast cells, was due to the liquid having been exposed to the air. The fluid was acid and not alkaline. Neither the yeast cells nor the acetic acid were injurious.

It is the contention of plaintiff's counsel that due to the use of a seventy-six percent caustic soda solution in the washing of the bottles, a portion of it must have been allowed to remain in the bottle and thus caused plaintiff's illness. Caustic soda, however, is, we are told, an alkali and the contents of the bottle were acid. Counsel contends, however, that in the six months which elapsed between the consumption of a part of the contents and the examination of the remainder by the chemist, the liquid might and probably did change from an alkali to an acid, however, the chemist is of the opinion that this did not occur.

■ It must be conceded that the plaintiff's story of the occurrence is sufficiently corroborated to make out a prima facie case. She testified that she drank a part of the liquid and immediately became violently ill, her mouth and throat were full of blisters. Her companion who had bought the drink for her testified to practically the same thing, as did the bartender not to mention her husband and doctor. Nevertheless, we cannot overlook the fact that in cases of this kind the defendant is at a distinct disadvantage since it cannot controvert the testimony of plaintiff and corroborating witnesses concerning the dire consequences following the consumption of its product. Russo v. Louisiana Coca-Cola Bottling Company, La.App., 161 So. 909.

It is, of course, possible that notwithstanding the care and precaution taken by the manufacturer in an effort to prevent contamination of its product that some deleterious substance or injurious matter may be overlooked. It is not impossible, but highly improbable, as we have heretofore said. In this case, however, a portion of the contents of the bottle was preserved and submitted to chemical analysis without revealing the presence of any poisonous matter. The blisters which plaintiff, her witnesses and her doctor testified to as being in her mouth and throat and on her lips were not there when Dr. Redding examined her or at least he so testified. Moreover, we think it reasonable to conclude, as counsel suggest, that if the blisters were there and were caused by the liquid the delicate membranes of the aesophagus and stomach would have been in a similar condition and there is no contention that they were.

■ We realize that too much emphasis may be placed upon the modern equipment

and sanitary precautions of a bottler of liquids intended for human consumption when suits for damages by individuals claiming to have been injured by drinking poisonous or deleterious matter in the consumption of the bottler's product are considered. However, each case must depend upon its own facts. We have considered a number of similar cases (Russo v. Louisiana Coca-Cola Bottling Company, supra; Hill v. Louisiana Coca-Cola Bottling Company, La.App., 170 So. 45; Von Herr v. Louisiana Coca-Cola Bottling Company, La.App., 148 So. 75) and in each instance have denied recovery because we felt that the plaintiff's case was lacking in proof or because the proof lacked plausibility. This case is in the latter class. It is simply beyond our comprehension or credulity.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.