## COMFORTO et ux. v. CLOVERLAND DAIRY PRODUCTS CO., Inc.
### No. 17314.

Court of Appeal of Louisiana. Orleans.
Feb. 26, 1940.

Maurice B. Gatlin, of New Orleans, for appellants.

St. Clair Adams & Son, of New Orleans, for appellee.

McCALEB, Judge.

The plaintiffs, Mr. and Mrs. Peter Comforto, have appealed from an adverse judgment dismissing their suit against the defendant, Cloverland Dairy Products Company, Inc., wherein they claim damages for the sickness they endured allegedly as a consequence of consuming a bottle of unwholesome milk which had been prepared, dispensed and distributed by the defendant as being fit for human consumption.

The questions presented by the record for our determination are solely ones of fact, i. e., (1) whether the plaintiffs were rendered ill as a result of drinking the milk; (2) whether the milk was unwholesome, and (3) if the milk was unwholesome, whether any deleterious matter entered the product at the time it was sold by the defendant.

Mr. Comforto testified in the lower court as follows: That on November 6, 1938, he sent his little daughter to a grocery store operated by a Mr. Marzile for the purpose of purchasing a pint bottle of milk; that, as soon as the milk was received, he and his wife consumed it; that a few minutes later they became violently nauseated and started to vomit and that, as a result, he was sick with diarrhea and intestinal trouble for about three weeks. He further says that, after he and his wife drank the milk they examined the bottle and discovered that it had a "very bad" odor.

The testimony of Mrs. Comforto is substantially the same as that of her husband except that she says that she was rendered ill for a little over two weeks and that, five days after they became sick, she and her husband were treated by a Dr. Cabibi.

Mr. Marzile, proprietor of the grocery store where the milk was purchased, corroborates the plaintiffs' story regarding the purchase of the milk and says that the bottle had been delivered to him by the defendant dairy company on the morning of the occurrence. He further states that he visited the home of the plaintiffs shortly after the milk had been consumed by them and found them ill, vomiting and otherwise sick.

His wife, Mrs. Marzile, corroborates her husband's testimony.

The evidence offered by the defendant shows that it operates a modern dairy wherein the milk dispensed by it is prepared and bottled with the utmost care. The machinery and other facilities used by it in the bottling process have been approved by the State and City Board of Health and regular inspections of its plant are made by chemists connected with those boards. In short, the proof submitted by the defendant on this score is substantially of the same kind and character as the evidence submitted by the Coca Cola and other beverage companies in similar cases which we have frequently had opportunity to decide.

The defendant further submitted for consideration the testimony of Dr. J. C. Menendez, who made a physical examination of the plaintiffs at its request approximately six days after they drank the milk. Dr. Menendez states, in substance, that the plaintiffs related to him the illness they suffered as a result of drinking the milk; that his examination revealed that their temperature and pulse were regular and that they did not present any symptoms whatsoever of acute ptomaine poisoning or stomach ailments resulting from the ingestion of infected milk. He further says that, if their statements (that the milk caused them to vomit and purge) were correct, the toxic absorption from the intestinal tract would have been very great and would have required treatment because they would have had high temperature and chills necessitating their confinement in bed. He concludes that none of these symptoms were present at the time he examined them and that they were both up and about fully dressed apparently in a "happy and healthy state."

We have often said in cases of this type (see Freeman v. Louisiana Coca Cola Bottling Co., Ltd., La.App., 179 So. 621, Hill v. Louisiana Bottling Co., La.App., 170 So. 45, and Russo v. Louisiana Coca Cola Bottling Co., La.App., 161 So. 909, 910) that, "in considering whether such an accident actually occurred, it is well to bear in mind that the manufacturer necessarily can have no means of disproving by eyewitnesses that the occurrence alleged actually took place. In such circumstances, plaintiff's evidence should be most carefully scrutinized, especially when, as here, the evidence of defendant shows that because

of the extreme care employed in the course of manufacture and in the course of bottling, it is, though not impossible, highly improbable that a foreign substance could have entered into the article."

■ Applying this rule to the facts of this case, it will be immediately seen that the plaintiffs' proof falls far short from making out a prima facie case. They both testified that, when they drank the milk which is supposed to have injured them, they had not partaken of any other solid food or liquids on that day and they would have us believe that, merely because they started to vomit a few minutes afterwards, the milk was the underlying cause of the illness suffered by them. Neither of them testified as to what they had eaten on the day previous to the date they consumed the milk and it is just as probable that the consumption of some other food or beverage was the real cause of their ailments. Indeed, although they say that they were treated by Dr. Cabibi for their sickness, he was not produced to testify in the case and no valid reason is shown for his absence. Under such circumstances, we are entitled to presume that, had Dr. Cabibi testified, his evidence would have been unfavorable to the plaintiffs' case. In fact, in all of the cases where a recovery has been allowed for food poisoning, the evidence of the plaintiff has been corroborated by the opinion of a medical expert to the effect that the cause of the sickness is directly attributable to the food or beverages complained of. See Ogden v. Rosedale Inn, La. App., 189 So. 162, and cases there cited.

■ In the case at bar, not only have the plaintiffs failed to produce medical proof to substantiate their claim, but there is no showing on their part that the milk contained any deleterious substance. The plaintiffs refrained from testifying as to what foreign substance they found in the milk. They merely say that it had a "very bad" odor. Their witnesses, Mr. and Mrs. Marzile, suggest that the milk bottle had the odor of oil or turpentine. However, the evidence produced by the defense, while not conclusive, demonstrates that it is highly improbable that any foreign substance such as oil entered the milk either during the bottling process or during the time it was in its possession.

On the whole, we find that plaintiffs have failed to prove their case with reasonable certainty. The judge of the lower court, who had an opportunity of seeing and hearing the witnesses, was evidently of the same opinion. We are unable to discover manifest error in his conclusion on the facts.

The judgment appealed from is therefore affirmed.

Affirmed.

JANVIER, J., absent, takes no part.