## HOLLIS v. OUACHITA COCA–COLA BOT-TLING CO., Limited.

### No. 6128.

Court of Appeal of Louisiana.
Second Circuit.

May 3, 1940.

Shotwell & Brown, of Monroe, for appellant.

Warren Hunt, of Rayville, for appellee.

HAMITER, Judge.

Violent illness was allegedly experienced by plaintiff, Mrs. Birdie Hollis, when she drank a portion of a bottled coca-cola. She sues the Ouachita Coca-Cola Bottling Company, Limited, the manufacturer thereof, to recover damages for the claimed resulting injuries.

The petition recites in part: " * * * that upon starting to drink the coca-cola from the bottle some solid foreign substance brushed her lips and passed into

her mouth; that she immediately cast the coca-cola from her mouth back into the bottle, and upon examination found that the bottle contained the major portion of a decayed spider, which she had taken into her mouth. Avers that a part of the beverage was swallowed by her before she became aware of the presence of the foreign substance."

Plaintiff's material allegations of fact are denied by defendant in its answer. Affirmatively, and in detail, it avers the care and precaution which it takes in bottling coca-cola, and the sanitary methods adopted to insure the cleanliness of its product.

The trial court, after hearing evidence on the merits of the case, found that the beverage contained a deleterious substance and that plaintiff was rendered nauseated and sick by the taking of it into her mouth; and condemned defendant to pay to plaintiff the sum of $600 with five per cent per annum interest from October 3, 1939, for the "pain, discomfort and injury" suffered by her.

This appeal was prosecuted by defendant.

Some minor discrepancies are noticeable in the testimony of the several witnesses appearing in plaintiff's behalf. However, the evidence, considered as a whole, amply sustains the following finding of fact: Mrs. Hollis, aged 45 years, accompanied her husband into the business establishment of the Rayville Drug Company, of Rayville, Louisiana, about eight o'clock of the evening of October 9, 1937, and they seated themselves at a table located near the front. The premises were well lighted, and no curtains or other objects hid the parties from public view. Each purchased and was served a bottle of coca-cola, the contents of which was prepared and bottled by the defendant company. After drinking about two-thirds of her beverage, plaintiff felt a foreign substance pass between her lips into her mouth and against her tongue. This, to use her expression, was "spit back" into the bottle; and she remarked, "There is something in this coca-cola." Immediately thereafter the portion of the contents remaining was poured into a serving tray and examined. It was found to contain dregs and also a slightly decomposed and thoroughly soaked spider of the black widow specie.

Dr. H. C. Chambers, who maintains his office behind the drug establishment, was called into the store when the foreign matter was found. On his suggestion, plaintiff promptly drank a big dose of epsom salts. Fifteen or twenty minutes later she went into his office complaining of nausea, and of pains and cramps in her stomach. She was upset and nervous, and appeared to be very sick. Thereupon he gave her some apomorphine to cause an emptying of the stomach. The desired results were obtained in a few minutes. Additionally, the narcotic relieved the cramping and general discomfort and produced sleep. She was then placed in an automobile and conveyed to her home.

The following day, or October 10, 1937, and also on October 14, 1937, the physician visited her at the family residence. On the first of these occasions he found her "still nauseated, vomiting, suffering with severe headache, pains in abdomen and some pains about the chest;" and she was given a sedative and a purgative. The second visit, with an attendant examination, disclosed a continuation of the abdominal pains; that she was very nervous and generally upset; and that a temporary paralysis of her legs was being experienced.

Plaintiff was confined to her bed almost continuously for one and a half to two weeks following her drinking of the coca-cola. For some time thereafter she felt the effects of her illness, during which period she made several visits to the doctor's office.

According to the medical evidence in the record, the symptoms possessed by plaintiff are also produced, but in a more severe form, by the bite of a black widow spider. Dr. Chambers, who was the family physician, was unable to state whether or not they were the direct result of poison from such insect that was swallowed. He was definitely of the opinion, however, that her illness was brought about by the spider's presence in the drink, for, as stated by him, "she was not sick before she took it, and she got sick, and so acutely, afterwards."

The defense expert, Dr. A. G. McHenry, was of the belief that poison from a spider, if swallowed, would be destroyed by gastric juices and enzymes of the stomach, and no pernicious infection would result therefrom. He attributed the symptoms possessed by plaintiff to the experiencing of her menopause, and to other causes. By the latter phrase was meant "from having taken something that she regarded unclean in her mouth"; and he thought that shock and unpleasantness, such as would superin-

duce vomiting or nausea of different degrees of severity in different individuals, attended the taking. It was his opinion, however, that "a normal individual should be over the effects in a week."

In substantiation of the special defense set up in the answer, defendant's general manager, M. S. Beidenharn, lucidly described the modern and sanitary equipment and methods employed by his company in the preparation of coca-cola. In great detail and very interestingly, the course of operations was traced by him, beginning with the placing of the empty bottles in the mechanized equipment and continuing through the various necessary stages, including sterilizing, rinsing, brushing, filling and capping. On completion of the manufacturing process, all steps of which are performed with automatic machinery, inspection of the bottles and contents, with the aid of lights, occurs. It is improbable, though not impossible, stated such manager, for an insect to be in a bottle of the finished product on its leaving the plant.

■ It is the law of this state that a manufacturer of bottled beverages or food is chargeable with knowledge of the contents of the bottles which it distributes and sells for public consumption, and if ill effects are suffered by a person from drinking such contents, as originally prepared and distributed, it is liable for all damages occasioned. Kelly v. Ouachita Dairy Dealers Cooperative Ass'n, La.App., 175 So. 499.

■ Of course, in a suit of this nature the plaintiff must establish that the complained of injury was proximately caused by the act or omission on which defendant's contended liability is predicated. Furthermore, the proof offered by the complainant should be carefully scrutinized, because the manufacturer usually has no means of disproving by eye witnesses the occurrence of the alleged accident; and this is particularly true when extreme care in the preparation of the bottled beverage has been shown, as in the instant case. Russo v. Louisiana Coca-Cola Bottling Co., La.App., 161 So. 909; Hill v. Louisiana Coca-Cola Bottling Co., La.App., 170 So. 45; and Freeman v. Louisiana Coca-Cola Bottling Co., La.App., 179 So. 621.

■ It is contended by defense counsel that plaintiff has not shown the bottle to have been untampered with in some way after leaving defendant's possession and before being given to Mrs. Hollis; and further, that there is a lack of testimony to prove that she "had not eaten or drunk something which disagreed or may have disagreed with her during the day prior to the time that she drank from the coca-cola." In support thereof the case of Dean v. Alexandria Coca-Cola Bottling Co., La. App., 148 So. 448, is cited.

The evidence in the record, we think, satisfactorily refutes the two contentions. It appears therefrom that the Rayville Drug Company, which served the drink to plaintiff, purchased coca-cola only from the defendant. Each morning, except during midwinter, defendant's employee visited the store and delivered the quantity of coca-cola required by the dealer for the day's business. The instant incident did not occur during the excepted period. The filled cases were placed near the prescription section on delivery, and the bottles were transferred to the cooling box located at the end of the fountain. Coca-cola becomes unpalatable or flat through the loss of one of its principal ingredients, carbon dioxide, within a short time after the cap of the bottle is removed. The beverage of which plaintiff partook had not sustained that loss. "It was sparkling", she states. According to Dr. Chambers, plaintiff was in good health immediately before the occurrence of the unpleasant event, and only the coca-cola caused the illness.

It is our opinion, reached after closely and carefully studying the record and properly evaluating the proof, that plaintiff has adequately discharged the burden which she carries in this litigation and has satisfied all of the above mentioned requirements.

■ There appears no good reason for our disturbing the quantum fixed by the trial judge. It does justice between the parties, and is sustained by precedent. Kelly v. Ouachita Dairy Dealers Cooperative Ass'n, supra.

■ Counsel for appellee suggests a correction of the judgment with respect to the date from which the stipulated interest should run. Although such litigant has neither appealed nor filed answer to defendant's appeal, she is entitled to have the judgment corrected so as to provide for legal interest on the award from date of judicial demand. This is so because of the nature of the action and of statutory direction. Act No. 206 of 1916; Poulan v. Gallagher, La.App., 148 So. 511; Layne v.

Louisiana Power & Light Co., La.App., 164 So. 672.

The judgment, therefore, is amended so as to allow legal interest from date of judicial demand; and as thus amended it is affirmed.