At the time of the occurrence on which this suit is based plaintiff, Matt A. Piacun, owned and operated a small sandwich and cold drink establishment in New Orleans. He purchased, at wholesale, and sold to his customers various varieties of carbonated cold drinks, among them, coca cola, a product of defendant, Louisiana Coca Cola Bottling Co., Ltd.,
He brought this suit for damages against the said beverage company and its liability insurance carrier, Hartford Accident Indemnity Company, alleging that as a result of the explosion of a bottle of coca cola, which was in his ice-box, he was badly cut about the arm and face by broken glass. He alleges that on the day before the accident he received several cases of coca cola, manufactured, bottled and delivered by the defendant beverage company, and that at the close of business on that day he removed the bottles of coca cola from the cases in which they had been delivered and placed them in his beverage cooling box; that he did this at the close of business and that on the next morning, at about 9 o'clock, just as he opened the box to serve a customer, and before he had disturbed the contents in any way or had even touched anything that was in the box, a bottle of coca cola exploded with the disastrous results already referred to.
He charged that the said beverage company was negligent in several specified designated particulars: in failing to obtain proper bottles, in not charging the said bottles with a proper amount of gas and in failing to cap the said bottles properly. He made no general charge of negligence but, after setting forth the specific charges averred "that this information and knowledge is peculiarly and solely within the intelligence of defendant herein, and your *Page 423 
petitioner therefore specifically pleads the doctrine of res ipsa loquitur."
He prays for solidary judgment against the said Louisiana Coca Cola Bottling Co., Ltd., and Hartford Accident Indemnity Company for $10,000, and for a fee of $100 for a medical expert, who, he alleged would be required to testify in his behalf.
The defendants admit that the said beverage company manufactures and sells the carbonated soft drink known as "Coca Cola", and that, as alleged, a route salesman of the said company delivered several cases of the said drink to the place of business of plaintiff. They deny that there was any negligence on the part of the said beverage company in the particulars charged or otherwise.
There was judgment for plaintiff for $1,000 presumably against both defendants and for an expert's fee of $75. Both defendants have appealed devolutively and suspensively and plaintiff has answered the appeal praying that the amount of the award be increased to the sum originally prayed for, to wit $10,000.
The questions of law which must first be considered are: first, in view of the fact that the plaintiff has made no general charge of negligence but has relied on specific charges of designated acts of negligence, may he rely on the doctrine of res ipsa loquitur? And second, assuming that where no such general charge of negligence is made, the doctrine of res ipsa loquitur may be relied upon, is it applicable in such a case as this?
[1] In considering the first question, whether the doctrine of res ipsa loquitur may ever be relied upon where there is no general charge of negligence, we turn our attention at once to the case of Horrell et al. v. Gulf Valley Cotton Oil Co., 15 La. App. 603, 131 So. 709 for there the plaintiff, in a case in which unquestionably the doctrine of res ipsa loquitur would have been applicable, made specific charges of negligence and failed to prove them. We held that this failure was unimportant because the petition, in addition to specific charges of negligence, contained a general charge of negligence. In reaching this conclusion we followed what had previously been said in Frazier v. South New Orleans Light Traction Co., (unreported) No. 8608 of our docket, see Louisiana Southern Digest. If in the cast now before us we could find any general charge of negligence, we could follow the rule set forth in those two cases and hold the specific charges of negligence to be merely surplusage and that the doctrine of res ipsa loquitur should be applied because of those general charges. We note that the only proof in the record touching upon the specific charges of negligence made by plaintiff is that offered by the Beverage Company and that this evidence overwhelmingly proves the most careful kind of handling, the most careful kind of selection of bottles and, in fact, that these specific charges of negligence have been completely refuted. However, we note too that though the petition contains no general charge of negligence, it does contain a specific plea that the doctrine of res ipsa loquitur is applicable. The doctrine, where it is applicable, is based on the theory that because the thing which causes the accident is completely within the control of the defendant, or because the defendant alone can be expected to have knowledge as to the cause, the explanation must come from that defendant. See Lykiardopoulo v. New Orleans C. R. Light Power Co., 127 La. 309, 53 So. 575, Ann.Cas.1912A, 976.
But here plaintiff by his pleadings seems to call on the Beverage Company not for the general explanation of the possible causes but to give evidence touching upon only three designated charges. And on these charges the defendants have offered full proof.
[2, 3] Still we think that where there is a plea that the doctrine of res ipsa loquitur is applicable, it is, in effect, a plea of general negligence such as saved the situation in Horrell v. Gulf Valley Cotton Oil Co., supra, and in Frazier v. South New Orleans Light Traction Co., supra, and that even though such a plea is made in connection with designated, specific charges of negligence, we may treat those specific charges as surplusage and, under the doctrine referred to, the burden is placed upon defendants to go forward with the evidence and prove that there was no fault. If then, *Page 424 
the doctrine of res ipsa loquitur is applicable in a case in which it is shown that a bottle of beverage exploded, then the burden shifts to the defendants to show that the beverage company was without negligence.
[4] We make this statement conditionally because we think that under the jurisprudence of this state the doctrine of res ipsa loquitur is applicable in such a case only conditionally, that is to say it has application only after the person to whom the bottles were delivered shows that between the time of the delivery and the time of the accident, the particular bottle involved was not "opened or tampered with or improperly handled." Lanza v. De Ridder Coca Cola Bottling Co., La. App.,3 So.2d 217, 219. This was held too in Ortego et al. v. Nehi Bottling Works et al., 199 La. 599, 6 So.2d 677 in which the Supreme Court approved what had been said in the Lanza case. See also Auzenne v. Gulf Public Service Co., La. App., 181 So. 54; Meyers v. Alexandria Coca Cola Bottling Co., Ltd., La. App., 8 So.2d 737.
[5] We hold then that the doctrine of res ipsa loquitur is applicable provided we consider as satisfactory and acceptable the proof tendered by plaintiff to show that the bottle was not tampered with or improperly handled in any way, and that as a matter of fact he, himself, did nothing which would have caused the bottle to explode.
[6] We therefore pass on to a consideration of the evidence tendered on behalf of the plaintiff and we give to the details of that evidence careful scrutiny because we realize, as has so often been said, that in a case of this kind the bottler is ordinarily unable to produce any evidence whatever touching upon the actual occurrence. This rule, that in a case such as this is, the evidence of plaintiff must be carefully scrutinized, is well established. In Russo v. Louisiana Coca-Cola Bottling Co., La. App., 161 So. 909, 910, we said: "* * * In considering whether such an accident actually occurred, it is well to bear in mind that the manufacturer necessarily can have no means of disproving by eyewitnesses that the occurrence alleged actually took place. In such circumstances, plaintiff's evidence should be most carefully scrutinized, especially when, as here, the evidence of defendant shows that because of the extreme care employed in the course of manufacture and in the course of bottling, it is, though not impossible, highly improbable that a foreign substance could have entered into the article." See also Freeman v. Louisiana Coca-Cola Bottling Co., La. App., 179 So. 621; Hollis v. Ouachita Coca-Cola Bottling Co., Ltd., La. App., 196 So. 376, and Comforto et ux. v. Cloverland Dairy Products Co., La. App., 194 So. 43.
At the very beginning, of our study of the record we were impressed with the obvious intent of plaintiff to exaggerate to a ridiculous degree the very minor injury which he sustained. In his petition he prayed for $10,000 and in his answer to the appeal he insisted that he had been so badly hurt as to justify such an award. In his petition he claimed that an artery had been severed and that his head and face had been badly lacerated. His own doctor said that no artery had been severed and made no reference whatever to any cut upon the face or head. He ended his testimony with the statement that he considered the injury as "on the minor side." Though plaintiff went first to a hospital, he produced no hospital report nor the testimony of any one who treated him at the hospital to show that his face had been cut or that the cuts on his arm had been more than of minor importance.
In his testimony he referred to "blood pouring from my face", and yet we note again that his doctor seems to know nothing whatever about a cut on the face.
One of his witnesses, a friend who was in his establishment almost daily, said that he was "cut all over" and that they rushed him to the hospital "with buckets, what I mean buckets". And he added "practically a quarter of a bucket of blood he must have lost." Again we note the absence of any hospital report to show any such serious injury.
Plaintiff tried very hard to make the court believe that he had been incapacitated for several days and that he had been under the care of a doctor for several months. He was asked: "How long were you treated *Page 425 
by Dr. Mattingly?" He answered: "Well, off and on, I think, I don't know how long but that has been a good while." Yet his own doctor, the same Dr. Mattingly, who had treated him, said that he had seen him but once, "* * * that was the only visit for that injury that I saw him". In order to make it certain, counsel for defendant asked the doctor: "You saw him the one time for that injury?" and the doctor answered: "That is correct."
Now let us consider the occurrence itself. Of course plaintiff realized that it was quite important that he prove that he had not touched the bottle just before the explosion and he stated that "* * * I put my hand in there like this and before I touched anything that thing come out, exploded, cut my artery here, my wrist, and cut my face right here."
His witnesses, who had no reason whatever to notice whether he actually put his hand into the box are most positive that he did not do so. Both of these witnesses, who say they were present, were regular customers of the establishment almost every day and they both noticed the same thing — that his hand didn't go into the box at all. One of them, Behler, was drinking a cup of coffee and yet he noticed particularly that the plaintiff's hand did not enter the box. This witness was asked whether, on one of the days on which he visited the establishment, anything unusual happened and he commenced his answer with this volunteered statement: "Well, what occurred in front of me, in my presence." Behler, although he was very positive that plaintiff had not put his hand into the box, later on weakened a little and said that the bottle wasn't practically in his hand, it couldn't have been in his hand because it cut him across here."
We find much confusion and contradiction in the evidence of the various witnesses as to what became of the broken parts of the bottle after the accident. Plaintiff says that after the explosion the top portion of the bottle which had cut him flew out and "landed on the bar". He says that "it came out, half the bottle it seems like." When asked which half he said "The cap half." Yet his wife says that a little later she, herself went to the box and "found the top of the bottle that cut my husband." Behler says that only the bottom of the bottle remained in the box, yet the wife says that the top half was in the box when she looked into it.
The other customer who was in the establishment says that she does not know what kind of a bottle it was that exploded because when it happened "I was kind of late * * *". She then realized that she had been placed on the stand to prove that it was a Coca Cola bottle so she says that later on in the afternoon she went back into the establishment and was told that it was a Coca Cola bottle. In many other particulars the testimony of plaintiff's witnesses cannot be reconciled. Behler says that the plaintiff's wife was there. He was asked: "She was in the room where this happened?" and he answered: "That's right", and yet plaintiff's wife testified as follows: "Q. You didn't see the accident happen? A. No, I didn't see the accident happen." She says in fact that she did not even hear any commotion "because I was in the back at the time."
Behler says that another friend of his, whose name he did not know, was in the place helping him wrap up plaintiff's hand with a towel. But Mrs. Piacun, plaintiff's wife, says that this man to whom Behler refers was not in the establishment at the time, but came to the shop while her husband was at the drug-store having the cut attended to, and that she asked him to go to the drug-store and take plaintiff to the hospital.
One of the customer witnesses says that the accident occurred between 8:30 and 9 o'clock in the morning and that she is certain of this because she was on her way to work and was due to be at work at 9 o'clock. Yet another says that it took place between 10 and 12 o'clock in the morning.
The testimony of Behler as to what it was that cut plaintiff is interesting. At first he says: "The neck of the bottle is what it looked like hit him." Yet a little later he said that he did not see the neck of the bottle until after he got back from the hospital. But he says that he saw the bottom in the box before he went to the hospital, *Page 426 
but yet a little later he says that he did not look into the box until after he got back.
We fully realize that the many contradictions and inconsistencies which are apparent are in connection with comparatively unimportant details, and that on the main features of the case plaintiff's witnesses do agree. But we realize too that where the entire question is one of fact it is often only by checking for inconsistencies in minor details that it may be determined where the truth lies.
[7] We hesitate to reverse the finding of a district judge on a question of fact but in a case like this, it is evident that it is sometimes easier to discover such inconsistencies by comparing various portions of the transcribed record than it is to notice them while listening to the oral evidence of the witnesses. At any rate, we are well convinced from the record which is before us that there is no acceptable proof that plaintiff did not himself improperly handle the bottle or that the breaking of it was not the result of his own carelessness. Without such acceptable proof the doctrine of res ipsa loquitur is not applicable.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed and that plaintiff's suit be, and it is dismissed at his cost.
Reversed.