### F. W. WOOLWORTH CO. v. WILSON.

No. 7208.

Circuit Court of Appeals, Fifth Circuit.

Dec. 21, 1934.

Pinkney Grissom and Alex W. Spence, both of Dallas, Tex., for appellant.

D. M. Oldham, Jr., of Abilene, Tex., for appellee.

Before FOSTER, SIBLEY and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Clevie Wilson sued F. W. Woolworth Company because of a slowly developing but serious bodily injury which she claimed resulted from swallowing some glass in an ice cream soda furnished her, and recovered a

verdict for $7,500; the company appealing. The suit was in two counts, one charging negligence in the preparation and service of the ice cream soda, the other asserting an implied warranty that the food purchased by her was fit to be eaten. The defense was general denial, contributory negligence in swallowing the glass after feeling it in her mouth, and in not summoning medical aid promptly, and that the sickness later was due to recurrent pellagra and not to the glass. In the charge the counts were submitted together, the court instructing the jury that there was a warranty and if plaintiff got glass in her food and suffered injury from it she was entitled to recover her damage independently of negligence, but he required them additionally to find whether there was negligence. The verdict reads: "We, the jury, find for plaintiff damages in the sum of $7500.00. We find the defendant was guilty of negligence as claimed by the plaintiff." The evidence, except as to the cause and extent of plaintiff's sickness, is in no great conflict. Plaintiff and three other women entered the Woolworth Company's place where ice cream and soft drinks were served at a counter and at tables, and one of her companions offered to treat and paid in advance for what was served; each woman stating to the waitress what she wished. Plaintiff chose ice cream soda. This was prepared at the counter by putting into a goblet a flavoring syrup and cream, cracked ice, carbonated water, and ice cream, all kept near at hand and under cover save the cracked ice. From the bottom of the goblet plaintiff got into her mouth something which she supposed was ice and chewed it and swallowed some, but a piece stuck in her gum. This she pulled out, found to be glass, and exhibited it to the waitress, who summoned a superior. No other glass was found anywhere. No physician was called for several days. The cracked ice was in a receptacle near and beneath the level of the hard counter on which sometimes glasses fell and broke. Whenever that occurred great care was taken to see that all pieces were gathered up, and if any food receptacle was open nearby the contents were thrown away. It was not shown that any glass had been broken that day. Defendant proved that everything served was gotten from reputable dealers and was carefully handled, and no one else got any glass in anything served that day. There was great conflict in the evidence, as stated, touching the probable effect of glass swallowed and as to the extent and cause of the plaintiff's sickness.

She declined to be physically examined at the trial and the judge did not require it. Of the questions raised by the many complaints of error we find it necessary to deal with only two: Whether there was a contractual warranty of the food, and whether impropriety in the concluding argument of plaintiff's counsel requires a new trial.

Whether there is an implied warranty of fitness and quality where for a consideration food is prepared and served to a customer to be consumed on the premises from the dishes and by means of the utensils of the furnisher there is an irreconcilable conflict of authority. In a modern case (1918) in Massachusetts, Friend v. Childs Dining Hall Co., 231 Mass. 65, 120 N. E. 407, 5 A. L. R. 1100, and one in New York (1924) Temple v. Keeler, 238 N. Y. 344, 144 N. E. 635, 35 A. L. R. 920, it is maintained that the transaction is essentially a sale of goods for a purpose made known to the seller, where the latter's skill and judgment and opportunity to examine the goods is relied on, from which circumstances a warranty of fitness is to be implied. In more recent decisions in neighboring states these rulings have been denied correctness, and it has been held that there is not really a sale but predominantly a service; that the customer does not so much buy the food as the right to consume what he will of it, not carrying away but leaving any residue; and that by long-settled law there is a duty on the furnisher to use skill and care in procuring the materials, in preserving and preparing and serving them, for failure in which damages may be recovered; but no warranty is to be implied imposing liability irrespective of negligence. Kenney v. Wong Len, 81 N. H. 427, 128 A. 343; Nisky v. Childs Co., 103 N. J. Law, 464, 135 A. 805, 50 A. L. R. 227. These cases as annotated give an excellent review of the controversy. In Texas, where the present case arose, there is a decision by a Court of Civil Appeals, S. H. Kress & Co. v. Ferguson, 60 S.W.(2d) 817, much resembling the case at bar in which the warranty was asserted and enforced. Our first inquiry is whether this case is controlling in this court. We think not. The opinion begins by stating that the question on which the courts had divided, to wit, whether there was a sale or a service, was put out of the case by a stipulation made in the trial that there was a sale to the plaintiff by defendant as a retail dealer, and thereupon the authorities relating to implied warranties in sales by such dealers were applied. Article 1 of the Rev. Stats. of Texas reads: "The

common law of England, so far as it is not inconsistent with the Constitution and laws of this State, shall together with such Constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the Legislature." No provision of the Constitution or of any statute is here relied on, so that the common law of England is the rule of decision. Perhaps we should not be bound on such a question even by a decision of the Supreme Court of Texas. Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U. S. 518, 48 S. Ct. 404, 72 L. Ed. 681, 57 A. L. R. 426. Though Mutual Life Ins. Co. v. Johnson, Adm'r, 293 U. S. 335, 55 S. Ct. 154, 79 L. Ed. —— seems to point the other way. But the cited case is not by the Supreme Court but by one of the intermediate courts. We cannot regard it as fixing the common law for the state of Texas, since it stands alone, and especially since it put aside a crucial point whether or not such a transaction is truly a sale by a dealer. The duty is on us to ascertain the common law for ourselves.

We find the better reasons to be not with the decisions in Massachusetts and New York but with those refusing to follow them. Beside the cases in New Hampshire and New Jersey above cited, we refer also to Rowe v. Louisville & Nashville R. Co., 29 Ga. App. 151, 113 S. E. 823, and the federal cases, Valeri v. Pullman Co. (D. C.) 218 F. 519, decided in 1914, and King v. Davis, 54 App D. C. 239, 296 F. 986, decided in 1924, and Horn & Hardart Baking Co. v. Lieber (C. C. A.) 25 F.(2d) 449, in 1928, which hold that negligence and not warranty is the ground of liability for unwholesome food thus furnished. The question, however, is perplexing. In a sale at common law there was generally no warranty of quality or fitness implied, but caveat emptor was the rule. An exception obtained when a dealer sold food for immediate domestic use, 24 R. C. L., Sales, § 467, and when any article was sold for a stated use and the seller's judgment was relied on, § 459. It is quite logically urged that when food is furnished or prepared to be at once eaten title does pass at least to what is eaten, and that there is no real difference between a beefsteak sold to be cooked at home and one cooked for immediate eating, or between a sandwich to be taken away and one to be consumed at the counter. On the other hand, from an early time the innkeeper who furnished the public with food and shelter and the victualer who furnished food only were held not to sell and warrant food but to "utter" it and serve it, and to be liable for negligence but not to be insurers touching it, and this law is applied to the modern hotel and lunch counter. 14 R. C. L., Innkeepers, § 15; Merrill v. Hodson, 88 Conn. 314, 91 A. 533, 41 L. R. A. 1915B, 481, Ann. Cas. 1916D, 917; Sheffer v. Willoughby, 163 Ill. 518, 45 N. E. 253, 34 L. R. A. 464, 54 Am. St. Rep. 483. The service of this ice cream soda comes most reasonably under the law of the victualer. The law of negligence effectually protects not only the purchaser but any third person who eats, and requires a care proportioned to the serious consequences that might follow a want of it. The circumstances may often put the burden of showing care on the victualer under the principle of res ipsa loquitur, McPherson v. Capuano & Co., 31 Ga. App. 82, 121 S. E. 580; but sometimes not, Horn & Hardart Baking Co. v. Lieber (C. C. A.) 25 F.(2d) 449. The protection thus afforded to all concerned is fair and sufficient. There is to be sure no hardship in implying a warranty corresponding with these requirements of the law, because the only effect of it is to give a remedy in contract as well as in tort. There is a familiar example in matters of common carriage of goods or persons, where the contract or for carriage may either sue on the implied contract for such liability as the law fixes, or he or any person injured may sue in tort, alleging the duty which the law fixes and a breach of that duty. And in the case of physicians and surgeons the law requires the exercise of skill and diligence, and the contract for such a service carries an implied warranty that such will be exercised, but there is no implied warranty of the results of the treatment or operation. Accordingly in Travis v. L. & N. R. Co., 183 Ala. 415, 62 So. 851, 854, where there was a count in contract alleging that food sold for immediate consumption on a dining car was "guaranteed to be pure and wholesome" but was tainted, the court said: "A restaurant keeper warrants that the food which he serves in his restaurant belongs to that class of food which is generally accepted to be fit for ordinary human consumption, and that he has used, in the selection and preparation of his food, that degree of care which the law exacts of those who follow his occupation for a livelihood. The law requires that, in the selection of the food for his restaurant and in cooking it for his customers, he shall exercise that same degree of care which a reasonably prudent man, skilled in the art of selecting and pre-

paring food for human consumption, would be expected to exercise in the selection and preparation of food for his own private table." But to imply a warranty which imposes a greater liability than the law fixes may operate most unjustly, and is really a fiction probably far from the actual intention of the parties. If the customer before eating were to ask of the proprietor: "Will you warrant this food so that if it injures me you will be bound to recompense me?" The proprietor would most likely say: "I have used the utmost care to have it pure and good, and believe it is, and if it is not good you may have your money back, but I cannot assume for a few cents to insure you." An implied warranty beyond that set out by the Alabama court seems to us unreal and not expressive of the obligations understood to be assumed by the contract. It moreover fails to protect any one save the purchaser himself. Prinsen v. Russos, 194 Wis. 142, 215 N. W. 905. And it may be defeated, as it probably would be, by the proprietor by refusing to make such a warranty, for a warranty can never be implied contrary to the expressed contract. We are of opinion that the Woolworth Company was liable to plaintiff, if at all, because of negligence and not because of any implied absolute warranty of fitness of the ice cream soda served to the plaintiff at the request of her companion who bought and paid for it. The second count should therefore have been stricken on demurrer and should not have been submitted to the jury.

■ The jury found negligence as charged, and the evidence that the cracked ice was in an uncovered receptacle adjoining and just below the level of the hard counter where glasses were sometimes dropped and shattered affords a basis for a reasonable theory of negligence with reference to the ice, although it does not appear that any glass had recently been broken there. But the issue of negligence was submitted to the jury, not as the sole ground of liability, but as a sort of supplementary make-weight; the court having in effect instructed them that the liability existed because of the implied warranty. We do not think this was an adequate trial of the liability for negligence, and of the defense of plaintiff's contributory negligence in swallowing the glass and not promptly seeking medical aid. Close questions like these are ought to be decided by the jury will a full appreciation of their controlling importance.

■■ We think furthermore that a new trial is required because of impropriety in the concluding argument of plaintiff's counsel. Speaking of the defense that plaintiff's sickness was wholly or in part due to a recurrence of disease, made, as appears to us, in good faith and supported by testimony, counsel said: "They trumped up the whole case. It was not the stomach pump, nor the X-ray, but bringing their expert, Bozeman, who is a pellagra expert from a foreign land down here to tell you maybe she had and has got pellagra." Bozeman in fact came from Fort Worth, Tex. Defendant's counsel objected to the expression "trumped up," and to the assertion that Bozeman came from a foreign land. The court ordered an exception noted, apparently refusing to rebuke counsel, who proceeded to repeat that Bozeman came from a foreign land and trumped it up that she is suffering from pellagra, and further to say: "They would cast any slur in the world on her to get you men confused." In discussing the damages counsel, after describing plaintiff's condition as very pitiful, said: "Take it to yourselves, would you swallow that glass and put yourself in that girl's position for a few paltry thousand dollars? I don't care whether it comes from Woolworth or whom, that girl's life and liberty, her right to live—" Counsel for the defendant objected to the statement about the jury putting themselves in her place. The court made no ruling, but plaintiff's counsel continued: "You can have all the exceptions you want. I don't want to be stopped. That girl is entitled to her life and liberty and her happiness which the good God has given her in the surroundings of her middle age, to compare with her two sisters and to be permitted to go through life unrestricted and uncrippled. * * * Woolworth is begging you not to give her damages out of his pocket because his money is worth more than that girl's life, that girl's right to live, that girl's right to be a free and independent person and work for her own livelihood. No, you men know that she is a care on society, she is a care on her sisters, she is a care on her seventy-three year old mother, and it will take some sum of money out of Woolworth's pocket but it will never compensate her for what she has lost and for the sorrow that she goes through and will go through with when you are off on your way enjoying good health." The appeal to the jury to put themselves in plaintiff's place was improper. One doing that would be no fairer judge of the case than would plaintiff herself. Dallas Ry. & Terminal Co. v. Smith (Tex. Civ. App.) 42 S. W.(2d) 794. The fact must be very plain to

ever justify a lawyer in declaring his opponent's case to be trumped up. The references to the plaintiff's right to life, liberty, and happiness and Woolworth's money were not a fair presentation of the right to damages. Sympathy for suffering and indignation at wrong are worthy sentiments, but they are not safe visitors in the courtroom, for they may blind the eyes of Justice. They may not enter the jury box, nor be heard on the witness stand, nor speak too loudly through the voice of counsel. In judicial inquiry the cold clear truth is to be sought and dispassionately analyzed under the colorless lenses of the law. We think counsel went too far, and the court should at least have rebuked the language and directed the jury to disregard it. New York Central R. Co. v. Johnson, 279 U. S. 319, 49 S. Ct. 300, 73 L. Ed. 706; Graves v. United States, 150 U. S. 118, 14 S. Ct. 40, 37 L. Ed. 1021. The case is close both as touching liability and as to the real cause of plaintiff's illness, and the damages given are very substantial. We cannot be sure that the result was not influenced by the impropriety of argument, especially since it went wholly unrebuked by the judge. Compare Rouse v. Burnham (C. C. A.) 51 F.(2d) 709.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.