### FORD MOTOR CO. v. MAHONE.
#### No. 6569.

United States Court of Appeals, Fourth Circuit.

Argued April 16, 1953.

Decided June 9, 1953.

268

Parker, Chief Judge, dissented in part.

Aubrey R. Bowles, Jr., Richmond, Va. (H. Armistead Boyd, Jack N. Herod, and Bowles, Anderson & Boyd, Richmond, Va., on brief), for appellant.

George E. Allen and Ashby B. Allen, Richmond, Va. (Allen, Allen, Allen & Allen, Richmond, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is the second appeal in an action to recover damage on account of personal injuries sustained when a new Ford automobile was wrecked as the result of the blowing out of one of its tires. Plaintiff alleged that the blowout was caused by faulty workmanship in the assembly of the turnbuckle or adjusting sleeve on the left front tie rod, and that this allowed the turnbuckle to move and thus throw the front wheels out of proper alignment. On the former appeal we reversed a summary judgment for defendant and remanded the case for trial before a jury. Mahone v. Ford Motor Co., 4 Cir., 190 F.2d 910. On the trial had pursuant to the remand, a verdict was rendered in favor of plaintiff for the sum of $234,330, which was reduced with the consent of plaintiff to $135,000 upon an intimation by the trial judge that he would set aside the verdict unless plaintiff gave such consent. From judgment on the verdict as thus reduced the defendant has appealed. Three questions are presented by the appeal: (1) whether there was error in denying defendant's motion for a directed verdict; (2) whether there was error in permitting plaintiff to recover as an element of her damages for the loss of consortium sustained by her husband as the result of her injury; and (3) whether the verdict should have been set aside notwithstanding plaintiff's willingness to remit the excess above $135,000.

■■ We think that the motion for a directed verdict in favor of the defendant was properly denied. In our opinion on the prior appeal we considered, in the light of the record then before us, whether there was sufficient evidence to take to the jury the issue of neglect on the part of the Ford Motor Company in allowing the automobile to leave its factory without sufficiently tightening the nuts and bolts on the turnbuckle on the left front tie rod. A new element was introduced into the case in the second trial in the District Court where there was evidence to the effect that, after the automobile was delivered by Ford to the Richmond Motor Company, its dealer in Richmond, and before the car was sold to the plaintiff's husband, the dealer inserted a device called a "shim" in the mechanism of the left front wheel assembly in order to alter the toe-in of the front wheel of the car. There was evidence to the effect that it was a mechanical impossibility to insert the shim and make the necessary adjustments without loosening and retightening the nut whose faulty condition caused the accident, and it was contended on behalf of Ford that the defective condition of the car and the injury of plaintiff were thus produced by an intervening and superseding cause so that the negligence of Ford was not the proximate cause of the injury even if the nut was loose when the car left the factory. Much evidence, both factual and expert, was offered by the Ford Company tending to support its position on this point; but there was countervailing evidence sufficient in our opinion to take the case to the jury. Much of the evidence was of a technical nature and a discussion of the details at this time would serve no useful purpose and would not be desirable since the judgment must be reversed on another ground and the case remanded for a new trial. The evidence as to contributory negligence was conflicting and was properly submitted to the jury.

■ The second question is whether the District Judge erred in instructing the jury that if they found for the plaintiff she was entitled to recover not only for her bodily injuries, but also for the loss of consortium on the part of the husband, as well as for medical and hospital expenses. It is contended that this instruction was wrong in so far as it related to damages for the husband's loss of consortium, but the majority of the court is of the opinion that there was no error in this respect for the following reasons.

In the opinion of the majority, the Supreme Court of Appeals of Virginia, whose interpretation of Virginia statutes is binding on this court, has clearly held in Floyd v. Miller, 190 Va. 303, 57 S.E.2d 114, 116, that in a suit for personal injuries in Virginia a wife may recover not only for such injuries but also for all expenses and for the husband's loss of consortium incident to the injuries, and that the husband

is deprived of the right to recover for these two elements.

In that case the court traced the legislative history by which the husband's right at common law to recover for the loss of the domestic services and consortium of the wife were modified by statute. It showed that the husband's right to recover for the loss of the domestic services of his wife was taken from him and given to his wife, but that his right to recover for the loss of her consortium was left undisturbed, by section 5134 of the Virginia Code of 1919 which was as follows:

"In an action by a married woman to recover for a personal injury inflicted on her, she may recover the entire damage sustained, notwithstanding the husband may be entitled to the benefit of her services about domestic affairs; and no action for such services shall be maintained by the husband."

The court further said that the husband's right to recover for loss of consortium was also taken from him and conferred upon his wife by an amendment of section 5134, which was enacted in 1932 as follows:

"In an action by a married woman to recover for a personal injury inflicted on her, she may recover the entire damage sustained including the personal injury, expenses arising out of the injury (whether chargeable to her or her husband) notwithstanding the husband may be entitled to the benefit of her services about domestic affairs and consortium; and no action for such injury, expenses, or loss of services or consortium, shall be maintained by the husband."

Speaking of this amendment, the court said:

"In clear, positive and inclusive language, it enumerates and expressly gives to the wife the right to recover every item of damage incident to her injury. By language equally clear, explicit and inclusive, it expressly provides that no action for any element of damage incident to such personal injury

of the wife, can 'be maintained by the husband.'

"* * * Undoubtedly his right to maintain an action against the tort feasor for any element of damage is taken from him and granted to the injured wife as was the right to recover for domestic services of his wife taken from him and vested in her by the amendment in that respect made by the Code Revisors in the Code of 1919. * * * The language of the amendment made by the Acts of 1932, ch. 25, p. 21, and now a part of sec. 5134, is equally as clear and even more positive in its terms that its purpose and intent are to deprive the husband of the right to recover the other two elements of damage incident to her injury, i. e., loss of consortium and all expenses chargeable to him which he had theretofore enjoyed, and vest these remaining two elements of damage in the injured wife."

The court concluded in the case before it that the husband could not recover from the wife's estate expenses actually incurred by him as the result of the injury. There was a dissent on this point, but the writer of the dissent, speaking on behalf of the dissenting judges, agreed that the statute conferred the initial right upon the wife to recover for all damages flowing from the injury. He said:

"* * * As I view the statute, it was intended to effect merely a change in the form of the remedy theretofore available to the husband to recover, for his own benefit, these damages sustained by him. The primary purpose was to avoid harassment of the defendant by multiple litigation and to insure that all of the issues arising out of the tort committed by him would be settled in one action. The wife's action to recover personal injury expenses should therefore be regarded as for the benefit of her husband, to the extent above indicated."

The view of the dissenters that the husband should be allowed to recover from the wife for expenses actually incurred by

him was incorporated in an amendment of section 5134 which was passed in 1950 and now appears as section 55–36 of the Virginia Code. That section as amended now provides:

"A married woman may contract and be contracted with and sue and be sued in the same manner and with the same consequences as if she were unmarried, whether the right or liability asserted by or against her shall have accrued heretofore or hereafter. In an action by a married woman to recover for a personal injury inflicted on her she may recover the entire damage sustained including the personal injury and expenses arising out of the injury, whether chargeable to her or her husband, notwithstanding the husband may be entitled to the benefit of her services about domestic affairs and consortium, and any sum recovered therein shall be chargeable with expenses arising out of the injury, including hospital, medical and funeral expenses, and any person, including the husband, partially or completely discharging such debts shall be reimbursed out of the sum recovered in the action, whensoever paid, to the extent to which such payment was justified by services rendered or expenses incurred by the obligee * * * and no action for such injury, expenses or loss of services or consortium shall be maintained by the husband."

This amendment has no application to the case at bar since the injury to the plaintiff occurred on August 9, 1949, prior to the passage of the amendment.

The writer of this opinion does not concur in the view that under the Virginia statute the wife may recover for her husband's loss of her companionship and society, but thinks that the language of the opinion in Floyd v. Miller, supra, relied on by the majority as the basis for a conclusion to that effect was used in a case in which the point was not involved and is therefore mere dictum which is not binding on this or any other court and would not be followed in a case in which the point was before the court for decision. It is ele-

mentary that statutes in derogation of the common law are to be strictly construed; and the language of the statute here was manifestly intended to do no more than to give to the wife the right to recover, as though she were unmarried, for injury sustained by her without regard to the husband's right to services and consortium. It will be noted that the provision relied on is incorporated in the section which permits the wife to sue and be sued and contract and be contracted with as though she were unmarried. It does not provide that the .wife may recover damages on account of the husband's loss of consortium, but merely that she may recover the entire damage sustained, which is defined as "including the personal injury and expenses arising out of the injury"; and it goes on to make clear that she may have this recovery "notwithstanding the husband may be entitled to the benefit of her services about domestic affairs and consortium". The fact that, where the wife recovers under this provision of the statute, there may be no recovery by the husband for loss of services or consortium does not mean that she may recover for his loss of consortium, but merely that there may be no recovery as to that element of damage in a suit where she recovers as though she were unmarried. Nothing in the language used indicates that it was intended that the wife should be permitted to recover damages on account of the husband's personal loss of her companionship and society; and any such intention is effectually negatived by the 1950 amendment to the statute, which provides:

" * * * and any sum recovered therein shall be chargeable with expenses arising out of the injury, including hospital, medical and funeral expenses, and any person, including the husband, partially or completely discharging such debts shall be reimbursed out of the sum recovered in the action, whensoever paid, to the extent to which such payment was justified by services rendered or expenses incurred by the obligee, * * *."

Under this amendment, if the wife recovers damages on account of expenses

paid by the husband, the recovery is chargeable in his favor for their reimbursement, but no such provision is made with respect to damages awarded for loss of consortium. What part of the verdict here was awarded the wife because of the husband's loss of consortium we have no means of knowing; but the legislature could hardly have intended any such absurd result as that the wife could recover for the personal loss of the husband without any provision for him to share in the recovery while providing so explicitly for reimbursement of expenses paid by him. The decision in Floyd v. Miller related to the right of the husband to be reimbursed out of the recovery by the wife for expenses paid by him on account of her injury, a matter taken care of by the 1950 amendment. The Virginia court has never decided, in a case in which the question was presented, that the wife might recover damages on account of her husband's loss of her companionship and society; and this does not seem to me to be a reasonable interpretation of the Virginia statute. It is elementary that statutes are to be given a reasonable interpretation and that interpretations leading to absurd consequences are to be avoided. It is hard to imagine a consequence more clearly to be avoided under this rule than one permitting the wife to recover damages because of the damage that the husband has sustained through the loss of her companionship and society and forbidding the husband to participate in the recovery.

■■ We all are agreed, however, that the learned judge erred in refusing to set aside the verdict and award a new trial after finding that the verdict in favor of plaintiff was "manifestly unreasonable as to the amount of damages awarded" and excessive by the amount of approximately $100,000, that the verdict in favor of her co-plaintiff for $50,000 was more than three times as much as was justified, and that one of the jurors in the case had been guilty of misconduct in attempting, while the trial was in progress, to send a message to plaintiff's counsel designed to aid him in his conduct of the case. While the granting of a new trial on the ground that the verdict is excessive or that a juror has

been guilty of misconduct is ordinarily a matter resting in the sound discretion of the trial judge, we do not think it a sound exercise of the discretion for the judge to refuse to set aside the verdict where he finds it unreasonable and so grossly excessive as indicated by the finding here, especially when this is coupled with a finding involving partisanship on the part of one of the jurors. Verdicts of juries must be kept above suspicion and a judge should not hesitate to set a verdict aside where it is so grossly excessive as to be explained only on the basis of sympathy or prejudice or where a juror has been guilty of misconduct which brings the fairness of the verdict under grave suspicion. In such case it is not enough to require a remittitur as a condition of the verdict's being allowed to stand. Involved in the verdict here is the finding on the hotly contested question of liability as well as the question of damages; and the fact that the jury rendered a verdict for damages which the court found unreasonable and grossly excessive was a matter impeaching the fairness of the verdict with respect to both questions. We think, also, that it was no answer to the finding as to the misconduct of the juror for the judge to find as he did that defendant was not prejudiced by the misconduct. The misconduct was significant in that it showed that one of the jurors had been sitting on the case with partisan bias in favor of one of the parties; and when this appeared the verdict should have been set aside and a new trial had before a jury all of whose members were fair and impartial in the cause.

In Minneapolis, etc., R. Co. v. Moquin, 283 U.S. 520, 51 S.Ct. 501, 502, 75 L.Ed. 1243, where a remittitur of an excessive verdict resulting from passion and prejudice was ordered, the Supreme Court held that the verdict should have been set aside and a new trial ordered, saying:

"In actions under the federal statute no verdict can be permitted to stand which is found to be in any degree the result of appeals to passion and prejudice. Obviously such means may be quite as effective to beget a wholly wrong verdict as to produce an exces-

sive one. A litigant gaining a verdict thereby will not be permitted the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent."

In Brabham v. State of Mississippi, 96 F.2d 210, 213, the Court of Appeals of the Fifth Circuit, in holding that an excessive verdict due to passion and prejudice should have been set aside and not merely reduced by a remittitur, said:

"We agree with appellants, too, that a new trial ought to have been granted instead of trying to ameliorate a verdict which the trial judge concluded was oppressive and amounted to an injustice. The resentment and revulsion of feeling against what the jury apparently regarded as acts of high-handed oppression on the part of a petty officer, and as callousness toward those acts implied in retaining him in office, evidenced by the highly punitive character of the verdict, while natural and reasonable enough in determining who should be selected as officers of a community, have no place in the jury room. Verdicts made excessive by the passion and prejudice springing from indulgence, in the jury room, in such feelings, may not be cured by a remittitur, but only by a new trial. National Surety Co. v. Jean, 6 Cir., 61 F.2d 197; Minneapolis, St. P. & S. S. M. R. Co. v. Moquin, 283 U.S. 520 [521], 51 S.Ct. 501, 75 L.Ed. 1243; Fairmount Glass Works v. [Cub Fork] Coal Co., 287 U.S. 474, 485, 53 S.Ct. 252, 77 L.Ed. 439; c/f F. W. Woolworth Co. v. Wilson, 5 Cir., 74 F.2d 439, 98 A.L.R. 681; on the general question of power over verdict, c/f Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603, 95 A.L.R. 1150. The District Judge felt as the jury did, and as we do, the outrageousness of Varnado's conduct, if, as the jury evidently believed, the circumstances of the arrest were as plaintiff's evidence declared them to be. He regretted, as we

205 F.2d—18

do, that the jury in the course of considering the damages appropriate to be awarded was carried away by a sense of that outrage. He thought that a remittitur would restore to the verdict the cool justice that it lacked. We understand the law to be otherwise. We understand that while mere excessiveness in the amount to be awarded may be cured by a remittitur, that excessiveness which results from passion and prejudice, however natural the resentment which arouses it, may not be so cured."

What is said in the above cases with regard to the excessiveness of verdicts resulting from passion and prejudice applies with equal force where such excessiveness results from pity and sympathy, as was manifestly the case here, where plaintiff had been seriously and permanently injured and had to come before the jury in a wheel chair. Nothing else in the record explains the size of the verdict, which was more than nine times the maximum amount allowed by the law of the state for wrongful death, the mere interest on which at 3% per annum would be approximately $600 per month and which under the annuity tables of the Virginia Code, section 55–269, would provide an annuity for the period of the normal life expectancy of plaintiff of more than $21,000 per year. There was nothing in the record to justify such an award; and the trial judge found that it would result in "improperly enriching her (the plaintiff) at the cost of the defendant". Under such circumstances, we think that there can be no question but that the verdict should have been set aside and that the action of the judge in refusing to set it aside is subject to review by this court. See, in addition to the two cases last cited, Virginian Ry. Co. v. Armentrout, 4 Cir., 166 F.2d 400, 408–409, 4 A.L.R.2d 1064; Cobb v. Lepisto, 9 Cir., 6 F.2d 128; Southern Pacific Co. v. Guthrie, 9 Cir., 180 F.2d 295; Id., 9 Cir., 186 F.2d 926, certiorari denied 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343; Trowbridge v. Abrasive Co. of Philadel-

phia, 3 Cir., 190 F.2d 825, 830; Bucher v. Krause, 7 Cir., 200 F.2d 576.

For the reasons stated, the judgment appealed from will be reversed and the case remanded for a new trial.

Reversed.