**T. L. BRUMIT, Appellant,**

v.

**Nick and Mat COKINS, d/b/a Pier Drive Inn, Appellees.**

No. 12843.

Court of Civil Appeals of Texas.

Galveston.

June 9, 1955.

Rehearing Denied July 14, 1955.

Marsene Johnson, Jr., Williams & Thornton and R. Richard Thornton, Galveston, for appellant.

Markwell, Stubbs & Decker and Henry G. Dalehite, Jr., Galveston, for appellees.

CODY, Justice.

This action was brought by appellant, T. L. Brumit, to recover damages alleged to have been sustained by his wife, Melba Lee Brumit, as a result of her drinking a milkshake prepared and served by appellees to her on their premises. The appellees were Nick and Mat Cokins who were partners engaged in business under the name of Pier Drive Inn, preparing and serving food and drink for human consumption on their premises. At the conclusion of appellant's evidence, appellees moved for a directed verdict and the court thereupon withdrew the case from the jury and rendered judgment that appellant take nothing by his suit.

Appellant predicates his appeal on a single point which complains of the court's action in taking the case away from the jury and rendering judgment for appellees.

In the pleading upon which he went to trial, in addition to seeking to hold appel-

lees liable for damages proximately resulting to his wife from consuming food sold her which was not fit for human consumption under a warranty of fitness imposed by public policy, appellant plead various acts as negligence which proximately caused injury to his wife. Appellant also sought to hold appellees liable as having violated the provisions of V.A.T.S. art. 4471, and V.A.T.S. art. 706 of the Penal Code. Appellant did not plead res ipsa loquitur.

In view of the action of the court in withdrawing the case from the jury, we deem it unnecessary to state anything which their answers contained beyond a general denial.

█ In view of such action, appellant's evidence must be taken as true and all favorable inferences which can reasonably be drawn therefrom must be indulged. When the evidence is so considered, it must be taken to be to the following effect: That about 9:00 p. m. on April 15, 1953, appellant and his wife drove their automobile onto appellees' premises where the wife ordered and was served a hamburger and a milkshake by an employee of appellees. After appellant's wife had consumed the greater portion of the milkshake she started to gasp and cough. She coughed up a piece of glass out onto the ground and another piece onto her hand, which she gave to appellant. Thereupon the appellant took the receptacle with the remainder of the milkshake and showed same to appellee, Nick Cokins, who poured the remainder of the contents of the milkshake on the counter. The same was shown to contain five or six additional pieces of chipped glass. Appellant then drove his wife to the hospital where she coughed up two additional pieces of glass and her throat was examined and treated there by a physician. Appellant further introduced in evidence that his wife suffered pain and incurred medical, hospital and doctor's expense. Appellant introduced a copy of an emergency sheet from St. Mary's Infirmary which we have marked "Exhibit A" and appended to this opinion. We have omitted therefrom such matters as the certificate of the correctness of the sheet, etc.

Appellees present three counter-points, which we think it may be more constructive to discuss than to merely discuss generally whether the court erred in taking the case from the jury.

█ Appellees' first counter-point would have us hold that appellant, having introduced into evidence without any limitations as to purpose, a certified copy of the hospital record which purported to show that the wife received no injuries, is bound by said evidence and cannot recover. We overrule this counter-point as being without merit.

█ As will be noted, the emergency sheet gives data identifying Mrs. Brumit as to age, sex, religion, race, occupation, by whom employed, etc. It then goes on to give the statement made by Mrs. Brumit to the effect that she sipped up some glass in a malted milk which she swallowed and which she first thought was ice, and then realized was glass, and that she spit up a piece thereof after coming to the hospital. The remarks by the physician were "P. E. Negative. No Diagnosis. X-ray Negative. No Orders." and that the final disposition of the case was that she was sent home. It was developed on the trial that this was physician's jargon to the effect that a physical examination failed to disclose any injury. This would constitute, of course, the opinion of the physician and such opinion would not be binding on the jury. Travelers Insurance Co. v. Blazier, Tex.Civ.App., 228 S.W.2d 217. In no event could the emergency sheet establish that the appellant's wife did not suffer the pain which she testified that she suffered. It is true, of course, that ordinarily a party who introduces documentary evidence is not allowed to impeach or contradict it, accepting the part which is in his favor and repudiating another part. Here the history shown on the emergency sheet given by Mrs. Brumit was tendered to establish that she had been served a drink with glass in it. The physician's opinion appears to be that there was no detectable physical injury to the structure of her body; however, just as a party may prove a truth

or particular facts in direct contradiction of the testimony of his witness, so he may also disprove facts stated in a document which he has introduced. Masterson v. Bouldin, Tex.Civ.App., 151 S.W.2d 301, 308.

■ Appellees' second counter-point is to the effect that they were in a position of restaurant keepers and the milkshake, which was alleged to have contained glass particles, having been served to appellant's wife for consumption on appellees' premises, no implied warranty as to the wholesomeness or fitness of said milkshake arose as between appellant or his wife and appellees. We overrule the point.

There is authority to support the position taken by appellees in their second counter-point. F. W. Woolworth Co. v. Wilson, 5 Cir., 74 F.2d 439, 98 A.L.R. 681. The cited case is in all material respects the legal equivalent of the case before us for determination, and went up from Texas, and purports to determine the common law of Texas, and holds in effect that restaurant keepers in preparing and serving food for immediate consumption on the premises are predominantly engaged in performing a service, and not in selling food, and are liable only upon the ground of negligence which proximately results in injury to the consumer, and that there is no implied warranty that the food served to be immediately consumed is fit for human consumption. In so holding the court declined to follow the holding in S. H. Kress & Co. v. Ferguson, Tex.Civ.App., 60 S.W. 2d 817. The aforesaid Federal case was decided in 1934, and Judge Kennerly held in substance, in Harmon v. S. H. Kress & Co., D.C., 78 F.Supp. 952, that the Federal courts would now be bound to take the law of Texas, as declared by the courts of Texas, and he followed the Ferguson case.

In the Wilson case, aforesaid, the court undertook to distinguish it from the Ferguson case because in the Ferguson case [60 S.W.2d 818] the parties had agreed, among other things, "that the defendant [who maintained the soda fountain from which the soda with glass in it had been served], and its agents, then and there prepared and sold to the plaintiff, for immediate consumption, a vanilla ice cream soda, which she purchased * * *." This purported distinction was no doubt consistent with the court's view that no sale of food was involved, —— only a service, though the court was bound to know what the transaction was, and if the transaction was not a sale of food, as a matter of law, there could be no force in the parties calling it a sale of food. It seems to us that any such distinction is fanciful. The whole conception of the warranty which is implied by public policy that food sold for immediate consumption is implied for the purpose of conserving the health of members of the public. See Walker v. Great Atlantic & Pacific Tea Company, 131 Tex. 57, 112 S.W.2d 170; Jacob E. Decker & Sons, Inc., v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479; Griggs Canning Co. v. Josey, 139 Tex. 623, 164 S.W.2d 835, 142 A.L.R. 1424; Bowman Biscuit Company v. Hines, 151 Tex. 370, 251 S.W.2d 153. These cases were all decided after the Wilson case was decided. These Texas cases recognize as law that the warranty of fitness for human consumption is not implied in contract, but is imposed by public policy, and therein they differ from the Wilson case.

■ Where the only sanction for a rule of law is found in "public policy" great diversity of opinion necessarily arises. For instance, see Bowman Biscuit Company v. Hines, supra, where the Supreme Court divided four to five, and upon motion for rehearing, one of the majority changed his views sufficiently to change the judgment of the court. But it does not at all follow that all the views which had been expressed in the original minority opinion became the opinion of the Supreme Court. For instance, in the original majority opinion written by Justice Garwood in the Bowman Biscuit Company case, it was held, as we understand it, that want of knowledge on the part of the seller of the unfitness of food for human consumption is no defense under our pure food laws. As we un-

derstand Justice Smith's original minority opinion, lack of knowledge of unfitness would be a defense. (If this is so, then our pure food laws would certainly be emasculated.) The Justice who originally voted with the majority, that a wholesaler should be held to be liable the same as the manufacturer or retailer, apparently merely changed his position in that respect, leaving Justice Garwood's opinion with respect to our pure food laws as the view of the Supreme Court. But be that as it may, in Walker v. Great Atlantic & Pacific Tea Company, in an adopted opinion, it was specifically held that the lack of knowledge or means of knowledge on the part of the seller of the unfitness of food for human consumption is no defense under our pure food laws. In any case, V.A.T.S. art. 4471, which is identical in wording with art. 706 of the Penal Code, forbids any person from selling, etc., any article of food which is adulterated. This lays down the civil rule, as well as the criminal rule. In view of this, and of the holding in the Great Atlantic & Pacific Tea Company case, we consider that we must hold that the sale here in question of the milkshake constituted negligence per se. Of course if we are wrong in holding that appellees did sell food, and did not merely perform a service, our decision is wrong. But we cannot close our eyes to the fact that one buys the food which he consumes in a restaurant.

■ Appellees' third counter-point was that appellees did not violate the aforesaid pure food laws of the State, which is overruled.

The judgment is reversed, and the cause is remanded for a new trial.

## Exhibit A

"Copy of Emergency Sheet From St. Mary's Infirmary

Date: 4–15–53

Name: Mrs. T. L. Brumit    Address: 4028 – S½
Age: 22   Sex: Female    Religion: Bap't   Race: White
Occupation: Bookeeper [sic] and Cashier.    Where Employed: Silkenshaw Furniture Store
Relative or Friend: Husband (bus driver) Transit Company
Admitted: 9:15 P.M.    Brought to Hospital By: Car.

Patient states while at the Pier Drive Inn, she was sipping a malted milk per a straw. Some glass was in the fluid, which she swallowed. At first she thought it was ice, then realized it was glass. She spit up one piece right away and another after coming here.
Dr. McReynolds here
Dr. Delany notified        Dr. Davila here

Remarks: P. E. negative    No Diagnosis  (Remarks written by Dr. McReynolds)

X-ray negative    No Orders

Final Disposition of Case: Sent home

/s/ E. Davila   M.D.

/s/ 4–15–53