Frank W. **TRUITT**

v.

**SHAMROCK HOTEL.**

Civ. A. No. 8246.

United States District Court
S. D. Texas, Houston Division.
July 23, 1956.

Robert Dow Hamilton, Columbus, Ohio, Helm & Jones, Shirley M. Helm, Houston, Tex., for plaintiff.

Butler, Binion, Rice & Cook, W. N. Blanton, Jr., Houston, Tex., for defendant.

HANNAY, Chief Judge,

At all times material hereto, plaintiff was a citizen of the State of Ohio. Defendant, Shamrock Hotel, was and is now a corporation, having its principal place of business in Houston, Texas.

On or about June 19, 1952, and for several days thereafter, plaintiff was a paid customer or guest of the defendant hotel while in attendance at a convention of the Sertoma Civic Club International, of which plaintiff was a member. At approximately 7:00 P.M., on June 19, 1952, plaintiff attended a poolside dinner at such hotel for the Sertoma Convention. He was served food which was paid for out of the Convention Registration Fee. There was served by defendant at such meal, cold cuts, meat balls, hamburgers, fish balls, and various soft drinks. Plaintiff partook of such food, including the fish balls.

Later that night, at about midnight, plaintiff became violently ill, suffering from nausea, diarrhea, vomiting, weakness, fainting, retching, and severe pain and shock. A doctor was called and he attended plaintiff that night.

Plaintiff claims as a result of such illness he sustained a heart attack, which resulted in his permanent disability since June 19, 1952, loss of earnings, earning capacity, various doctor bills and expenses for medicines, for all of which he sues. He alleges as the basis of his cause of action the doctrine of res ipsa loquitur and breach of implied warranty.

Defendant answered and said that it served food prepared in the most sanitary manner; that no defect existed in such food; and that it used reasonable and ordinary care in preventing unwholesome food from being served. Defendant further says that plaintiff's condition is due to a pre-existing heart condition or disease, and that his illness on June 19, 1952, was not caused by any food which plaintiff may have been served by it.

The case was tried to the Court and a number of witnesses were heard, both orally and by deposition.

This case presents a number of questions for determination. First of all, was the furnishing of the food on the occasion in question, a sale, or was it a service.

In the case of F. W. Woolworth Co. v. Wilson, 5 Cir., 74 F.2d 439, 98 A.L.R. 681, decided December 21, 1934, the Court decided that there was no implied warranty of fitness and quality of food which was prepared and served to a customer to be consumed on the premises. However, since that time, in the case of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, decided April 25, 1938, the Court decided that in any question of substantive law it is the duty of the Federal Court to follow State Law as the rule of decision.

S. H. Kress & Co. v. Ferguson, 60 S.W.2d 817, decided by the Beaumont Court of Civil Appeals on May 24, 1933, clearly holds that there is an implied warranty that food sold and to be consumed on the premises was reasonably fit for human consumption, and that if it was not the retailer was liable for injuries resulting to the consumer.

This question was also decided by the Galveston Court of Civil Appeals on February 25, 1943, in J. Weingarten, Inc. v. Jimmie Lopes. Writ of error was applied for and denied on May 19, 1943, with the following docket entry: "Refused for want of merit." Since the opinion in this case was not pub-

lished, a copy of same is attached hereto, see 143 F.Supp. 380.

This is the law in some 30 of the 48 states. See Vol. 7, A.L.R. Annotated 2d, page 1027. This work also cites the case of Harmon v. S. H. Kress & Co., decided in 1948, D.C., 78 F.Supp. 952. Here Judge Kennerly took direct notice of Woolworth v. Wilson, supra, but he refused to follow it, and let the jury verdict stand against the defendant even though there was a finding by the jury that the occurrence made the basis of the suit was an unavoidable accident.

The latest expression of the Texas Courts on this question is Brumit v. Colkins, decided June 9, 1955, by the Galveston Court of Civil Appeals, 281 S.W.2d, 154, 157, in which Justice Cody used the following language:

"The whole conception of the warranty which is implied by public policy that food sold for immediate consumption is implied for the purpose of conserving the health of members of the public. [Citing numerous cases.] These cases were all decided after the Wilson case was decided. These Texas cases recognize as law that the warranty of fitness for human consumption is not implied in contract, but is imposed by public policy, and therein they differ from the Wilson case."

It is, therefore, clear that in Texas the obtaining of food in the manner involved in this case was that of a sale, and not merely that of a service.

The next point to be considered is whether the impure or unwholesome food, if served to a paid customer or guest, was within the implied warranty unless such food contained a "foreign substance."

The case of S. H. Kress & Co. v. Ferguson, supra, in which writ of error was dismissed, is clear and conclusive to the effect that such a condition is not necessary.

The next question to be decided is whether or not it is necessary in a

case such as this, for a plaintiff to prove negligence on the part of the defendant.

In the instant case, no proof was offered by either plaintiff or defendant as to the method and manner of the purchase, handling, care, preparation or serving of the food in question. Others attending the Convention were similarly stricken with food poisoning.

It is my opinion that since this is a case of implied warranty, no proof of negligence is required. In the case of Jacob E. Decker & Sons, Inc., v. Capps, 139 Tex. 609, 164 S.W.2d 828, 833, 142 A.L.R. 1479, the Texas Supreme Court, in discussing the breach of implied warranty that the food was fit for human consumption, said:

> "Since the warranty of suitableness is imposed by law as a matter of public policy, there is *no need for proof of negligence.*" (Emphasis added.)

The Court further said upon this subject:

> "In fact, a rule which would require proof of negligence as a basis of recovery would, in most instances, by reason of the difficulty of making such proof, be equivalent to a denial of recovery."

And said Court expressly held that one who sells food for human consumption, which causes injury to the purchaser or consumer, is liable for damages caused even though the defendant was not negligent in preparing the food in question.

In the case of Griggs Canning Co. v. Josey, 139 Tex. 623, 164 S.W.2d 835, 836, the Texas Supreme Court said:

> "The general rule is well established that in the sale of food products *for immediate consumption* by human beings there is an implied warranty that the commodity is wholesome and is fit for the purpose for which it is sold." (Citing numerous authorities.) (Emphasis added.)

In this case the Court further said:

> "In order to recover for breach of this so-called implied warranty *it is not necessary to prove any fault or negligence on the part of the dealer other than the mere sale of the unwholesome food.*" (Emphasis added.)

Another question involved in this case is one which is not without difficulty of solution, and that is whether plaintiff was caused to have a heart attack by reason of being food-poisoned on the occasion in question.

Immediately before plaintiff came to Texas to attend the Sertoma Convention, when he became ill, he apparently was in good health and able to perform his regular duties as a real estate agent in and around Columbus, Ohio. He did suffer, however, from arteriosclerosis, and he has been receiving disability compensation from the Veterans' Administration since June 21, 1952. This compensation is based on a condition of arteriosclerosis and multiple arthritis, both of which conditions plaintiff does not here contend could have been proximately caused by the alleged food-poisoning made the basis of this suit.

I am of the opinion that the proof in this case shows that, in all reasonable probability and with reasonable certainty, the food purchased from defendant and eaten by plaintiff at the poolside meal, and particularly the fish balls, did cause plaintiff to become very ill; and this illness did, directly and proximately, result in plaintiff's having a heart attack which was in no way related to or connected with the heart condition or disease plaintiff had before he was stricken in Texas on or about June 19, 1952.

In summation, I find from a preponderance of the evidence, the following facts:

1. On or about June 19, 1952, plaintiff, a then 60-year-old realtor, whose habits of industry and sobriety were good, and whose physical condition was such that in spite of the fact he had arteriosclerosis, he was able to do his work as a real estate broker without

pain or inconvenience, and he was able to earn a substantial amount in so doing.

2. While plaintiff was a paid customer or guest at defendant's hotel, at a poolside buffet dinner, he was served unwholesome food, which he ate.

3. The food served to plaintiff had been exposed to the hot sun for a long time prior to being served.

4. The food was intended to be, and was, eaten by plaintiff on defendant's premises.

5. Among the foods so served were some impure fish balls which were unfit for human consumption.

6. The unwholesome food poisoned plaintiff, who within a few hours after partaking such food, became violently ill, and as a result of such illness plaintiff sustained a heart attack, medically called myocardial infarction.

7. The heart attack which plaintiff suffered directly and proximately, in all reasonable certainty, caused plaintiff serious painful and permanent injuries and damage. Such damage was inclusive of the following elements, an none other:

(a) Physical pain and mental anguish from the time of the eating of the impure food to the time of this trial, as well as in the future;

(b) Lost earnings sustained by him, from the time of the eating of the impure food to the time of the trial;

(c) Diminished earning capacity to labor and earn money in the future; and

(d) Doctor's bills and expenses for medicines, incurred or paid by plaintiff, for the treatment of his injuries caused by the harmful food served him by defendant, before and after the trial, which charges for doctors and medicines were reasonable and necessary.

### Conclusions of Law

From the above findings, I conclude as a matter of law:

1. This Court has jurisdiction of the parties and the subject matter of this suit.

2. Defendant breached the implied warranty to serve, at the time and on the occasion in question, food which was pure and wholesome and fit for human consumption, and in so doing directly and proximately caused damages to plaintiff as outlined above, and such damages are substantial. See Dallas Ry. & Terminal Co. v. Orr, 147 Tex. 383, 215 S.W.2d 862; Crawford v. Pennell, Tex.Civ.App., 235 S.W.2d 531; Riley v. Norman, Tex.Civ.App., 275 S. W.2d 208; Cullinan v. Hare, Tex.Civ. App., 181 S.W.2d 594; and McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710.

I therefore conclude and rule that as a matter of law plaintiff is entitled to recover his damages from defendant, in the sum of $7,500, together with all costs of this suit.

All motions not heretofore ruled on are here overruled.

Let proper judgment be prepared and submitted.

Clerk will notify counsel.

### Appendix

Affirmed, February 25, 1943.

Filed, February 25, 1943.

J. WEINGARTEN, Inc., Appellant,

v.

Jimmie LOPES, Appellee.

No. 11,476.

Appeal from the District Court of Harris County.

CODY, Justice.

This suit was brought by the husband of Mrs. Thelma Lopes, as plaintiff, against appellant to recover damages sustained by her while eating a thirty-cent vegetable plate lunch in one of appellant's stores in the City of Houston, which damages it was alleged were caused by glass being in the food. The plaintiff sued upon the implied warranty that the food served his wife was fit for human consumption, and also upon the theory that the damages were the proximate result of negligence; but the negligence of appellant was abandoned. Appellant answered by way of

defense, among other things, that the injuries in question were caused by disability, illness, or accident in no way contributed to by it; or that the same were caused by accidental injuries sustained prior to or subsequent to the eating of the meal in question, and in no way caused by appellant.

The appellant moved for an instructed verdict at the conclusion of the evidence, which was overruled, and the court submitted but four issues to the jury. The jury's verdict was substantially as follows:

1. That the plate lunch sold by appellant to Mrs. Lopes contained glass.

2. That in eating the lunch Mrs. Lopes, while chewing a portion of it, encountered glass in it.

3. That the glass caused her injury.

4. That as the proximate result of encountering the glass, Mrs. Lopes sustained the following damage:

(a) $4,500 for physical and mental pain and suffering;

(b) $150 reasonable and necessary doctor's bills;

(c) $40 reasonable and necessary expenses for medicine;

(d) $108 reasonable and necessary additional expenses for maid hire.

The court rendered judgment for appellee against appellant in the sum total of the above enumerated items; and the appellant seeks a reversal upon the following points, which, for the sake of brevity, we have reworded as follows:

1. That the court refused to submit certain issues requested by appellant inquiring as to whether Mrs. Lopes, after she realized she had a hard foreign substance in her mouth, thereafter bit down upon such substance and swallowed a portion thereof, and did not exercise ordinary care to minimize her damages.

2. That the verdict of $4,500 for physical and mental pain and suffering up until the date of the trial is grossly excessive, requiring a remittitur.

It seems settled that: "The testimony of a party to a suit and admissions made by him must be construed as binding upon him, and not merely as raising issues of fact. His testimony is governed by different rules to those governing witnesses who are not parties." Southern Surety Co. v. Inabnit, Tex. Civ.App., 1 S.W.2d 412, 415. Invoking this rule, appellant considers that the testimony given by Mrs. Lopes would support a finding by the jury that she discovered that she had encountered glass (or a hard foreign substance) in the food while she was chewing it a sufficient time before she was injured to have, in the exercise of ordinary care, prevented or at least minimized her injury. The evidence touching on this point consists of testimony by Mrs. Lopes, who is, in legal contemplation, a party to the suit. Her testimony so far as relevant to this point, is as follows:

"Q. Tell us what occurred after you started eating that lunch? A. Well, when I got three quarters of the lunch eaten I bit down on something hard, and I punched Mrs. Ardie, at least I kind of shoved her, and I said 'I have got something in my mouth,' and she said 'for goodness sake, spit it out,' and about that time I felt a sharp pain in my jaw, I spit it out and she pulled it to the side of my plate, and it was this piece of glass.

\*  \*  \*  \*  \*  \*

"Q. How much of this lunch had you consumed? A. About three-quarters.

"Q. Is it your habit in eating, do you masticate your food rather thoroughly before swallowing? A. Yes, I do.

"Q. And on this occasion you were masticating your food thoroughly before swallowing? A. Yes.

"Q. You did not bite down on anything hard while you were masticating your food until you were three-fourths of the way through? A. Yes.

"Q. That is when you bit down on it? A. Yes.

"Q. And I believe you said when you bit down on it you pushed the lady with you, Mrs. Ardis? A. Yes.

"Q. Told her you had bitten down on something hard? A. Yes.

"Q. And then you immediately spit out what you had in your mouth, is that correct? A. Yes.

"Q. You did not attempt to swallow after you bit down on this hard substance, but immediately spit out what you had? A. I tried to spit it out.

"Q. And then you washed your mouth out with water? A. Yes.

"Q. I presume you spit that out? A. Yes.

"Q. Rinsed your mouth out thoroughly? A. Yes.

"Q. And after having bitten down on this you didn't attempt to consume any more of this plate lunch? A. No."

The evidence further shows that some glass became imbedded in her gums, and some small pieces were passed in her stool.

In connection with this point, appellant cited this holding: "It is well settled, that it is not only the moral but the legal duty of one who seeks redress for another's wrong to use due diligence to prevent loss thereby. The principle applies to a breach of contract, and a party is not entitled to compensation for consequences for a breach when he had opportunity to prevent them." Brandon v. Gulf City Cotton Press and Manufacturing Co., 51 Tex. 121, 128. And appellant contends that under the testimony of Mrs. Lopes, the jury could have found that Mrs. Lopes had the *information* that there was the hard foreign substance in her mouth in *time* to prevent her injuries, and the *opportunity* to prevent such injuries. We believe no good purpose would be served by presenting appellant's argument in support of such contention, for we are convinced that it would be sheer speculation and surmise whether the injury was suffered before or after Mrs Lopes realized that she had an injurious substance in her mouth. Certainly the evidence is insufficient to sustain a finding that Mrs. Lopes *knew*, in time to prevent or minimize her injuries, that the food was contaminated. Besides, before the new rules of practice came into effect, the rule was well established that, "If the defendant wishes to contend that the plaintiff might have prevented or minimized the damage for which the recovery is sought, he must set up the defense by special averments,"—must in effect plead confession and avoidance. 12 Tex.Jur., p. 335 et seq. No contention is made that the new rules have changed this. There being no pleadings by appellant to support the submission of such requested issue, the court did not err in refusing to submit the requested special issues. The basis of liability of the seller of contaminated food rests upon the implied warranty imposed by law that it is fit for human consumption. Jacob E. Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479; Griggs Canning Co. v. Josey, 139 Tex. 623, 164 S.W.2d, 835, 142 A.L.R. 1424. The salutary public policy enforced by such implied warranty that food is fit for human consumption will not be detracted from by doubtful speculations as to whether the person injured might not have saved himself from injury if he had sufficiently responded to the instinct of self-preservation.

We believe no good purpose would be served to detail the evidence in support of the seriousness of the injury to sustain the damages sustained by Mrs. Lopes. This is done in appellee's brief. We merely call attention to the substantial amount of the doctor's bill, the bill for medicine, of which there is no complaint. There can be no question but that the pain and suffering, in which physical injury was coupled with fright, was substantial. While we think that the damages awarded were liberal, and indeed the only serious question which we consider is presented by this appeal is whether or not such liberality shaded off into excessiveness. We have concluded there is not sufficient basis

for us holding the award excessive. We therefore decline to require a remittitur.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.

Applying rule 452, Texas Rules of Civil Procedure, to this opinion, it is ordered not to be published.